[Civ. No. 5275.  Third Appellate District.—May 31, 1935.]

GROVER C. CUMMINS, Respondent, v. SUE CUMMINS, Appellant.

[Civ. No. 5276.  Third Appellate District.—May 31, 1935.]

SUE CUMMINS, Respondent, v. GROVER C. CUMMINS, Appellant.

Carlos S. Hardy for Appellant-Respondent Sue Cummins.

Fred W. Morrison for Respondent-Appellant Grover C. Cummins.

PAULSEN, J., *pro tem.*—These actions, in which the parties are husband and wife, were tried upon the same evidence and were consolidated for the purposes of the appeals.

Before considering the cases separately or the several points involved therein, certain facts which relate to both cases should be stated.

The parties owned two houses and lots in Hollywood, California, the title to which was held under joint tenancy deeds, and one house and lot in Portland, Oregon, the title to which stood in the name of the husband. They had about $8,000 on deposit in a Texas bank in the husband's name, and an automobile registered in the name of the wife. In addition, they owned the household furnishings of the home in Hollywood, and certain other personal property that was used in shows and carnivals. All this property had been acquired during the marriage by the efforts of the parties.

On August 27, 1931, the wife left the family home, taking her minor son with her, and secured quarters at an hotel. · On

the same day she filed suit for divorce charging the husband with extreme cruelty. A restraining order was issued against the husband enjoining him from molesting the wife and minor child, from visiting or interfering with the wife's possession of the family home, from conveying or encumbrancing any of the community property, from collecting rents and from withdrawing any of the funds on deposit in the bank.

After service of the divorce complaint, summons and restraining order upon him, the husband went to the hotel where the wife and son were staying and endeavored to see her. She refused to see him or talk with him. He then called upon her attorney and through him secured a meeting with his wife. When this was done he sought a reconciliation, begged her to drop the divorce action and return home. He offered on his part to stop drinking intoxicating liquors, to desist from further abuse of her and agreed to act in the future as a loving and considerate husband. The wife declined to accept these overtures, insisted that she had endured years of abuse and cruelty, demanded a divorce and half of the community property for herself and custody of the minor child. The husband then offered to convey all of the community property to her and to grant other concessions if she would forgive him and return. The wife continued her refusal, stating that she "wanted a divorce and half of the property—that which the law would give her". The husband repeated many times his offer to give her all the property, and finally, through the intercession of the proprietress of the hotel, who was a mutual friend, a tentative agreement for reconciliation and settlement of property rights was effected. On September 1, 1931, the parties entered into a written agreement by which the husband agreed to convey the Hollywood and Portland properties to the wife, to pay her half of the money in the Texas bank, to give her a monthly allowance of $150, to pay the fees and expenses of attorneys, to discontinue his excessive drinking, and refrain from other objectionable conduct toward his wife. The contract also contained the following provisions: "Sue Cummins agrees to cause the said divorce action to be dismissed and agrees further that until said action is dismissed, the order to show cause heretofore made in said action against Grover C. Cummins, which is set for hearing on September 4th, 1931, shall be continued, and no further action taken by

Sue Cummins with respect to said divorce action, except to have the same dismissed upon the full completion by Grover C. Cummins of the obligations assumed by him herein with respect to the execution of this agreement and the delivery of the conveyance above provided for, and the payment of the said one-half of the moneys on deposit in the bank, and the payment of said attorney's fees and expenses, . . . Consideration to the said Grover C. Cummins from Sue Cummins for the making of this agreement and said conveyances and the transfer of said money, is the love and affection Grover C. Cummins has for his said wife, Sue Cummins, and her agreement to forgive him the indignities and wrongs inflicted upon her, and to resume marital relations with him, and to dismiss her said divorce action.'' Pursuant to this agreement the husband conveyed the property in question to one of the wife's attorneys, who subsequently conveyed it to her. He also gave her half of the money in the bank and paid the attorney's fees and expenses.

The parties returned to their home, and for about three weeks enjoyed ''a second honeymoon''. Thereafter, trouble arose, and in March, 1932, they again separated. On March 10, 1932, the husband filed this action to set aside the deeds. The wife thereupon filed a new suit for divorce, charging the husband with extreme cruelty and many abuses, some of which were alleged to have happened prior to the date of the reconciliation agreement. In the action to set aside the deeds, judgment was rendered for the husband and the wife appeals therefrom. This appeal will be considered first, but it should be noted here that the wife was successful in the divorce action, the court finding that her allegations of cruelty were true; that she was therein granted a divorce, the custody of the minor child, and allowance for his support. The court there found the property above mentioned to be community property and awarded it to the wife in lieu of alimony.

In the first action, wherein the wife is the appellant, the court found, among other things, that the reconciliation agreement of September 1, 1931, ''was not entered into by either of the parties with an understanding of the force and effect of the contract, and of the deeds executed pursuant thereto, by either of the parties thereto, and the signature and agreement of the plaintiff to said agreement and deeds was obtained by fraud and misrepresentation, and that

plaintiff and defendant have each failed and refused to comply with the terms and conditions on the part of each to be performed, and that the consideration for the making, executing and delivering of said agreement and the conveyances to the property transferred to defendant has wholly failed''. Appellant contends that these findings are not supported by the evidence.

Both parties admit that property settlements made for the purpose of bringing about a reconciliation between husband and wife are favored by the law; also, that contracts and conveyances between husband and wife are vitiated by fraud and misrepresentation, misunderstanding of the parties, or failure of consideration, the same as contracts and conveyances between strangers. The sole dispute on this appeal is as to the interpretation and application of the evidence.

Is there support in the evidence for the finding that the agreement ''was not entered into by either party with an understanding of the force and effect of the contract?''

It will be observed that this finding does not purport to deal with a mistake of fact. Indeed, respondent contends that it is justified because he did not understand that the transaction would affect the community status of the property. He testified that he knew what community property was; that prior to this transaction he held it as community property, and that it was his belief that the conveyance would vest the record title in his wife without changing the community character of the property conveyed. With this in mind, the question may be stated thus: Was there sufficient evidence to prove a mistake of law such as would warrant the relief granted?

Under proper circumstances, relief may be granted because of a mistake of law (Civ. Code, sec. 1576). Section 1578 of the same code provides: ''Mistake of law constitutes a mistake, within the meaning of this article, only when it arises from:

''1. A misapprehension of the law by all the parties, all supposing that they knew and understood it, and all making substantially the same mistake as to the law; or,

''2. Misapprehension of the law by one party, of which the others are aware at the time of contracting, but which they do not rectify.''

It is at once apparent that the finding was intended to bring the case within the terms of subdivision 1 of said section and that evidence which tends only to support the rule laid down in subdivision 2 thereof is not to be considered. Respondent testified: "At school I only went through the third reader. I can read printing if I spell it out. Some words I understand, and some I don't. I relied upon what Judge Hardy (appellant's attorney) and my wife told me. I read Exhibit 5 (the agreement) as best I could. I said: 'Half of the property is yours.' She said: 'It is in your name, all in your name.' I told her: 'I would deed the property to her in good faith, show you I mean well— didn't make no difference whether the property was in her name or my name, it was still community property.' I knew what community property was. I did not read the deeds and they were not read to me. I would not have signed the agreement or deeds in Judge Hardy's office on September 1st, 1931, if I had known that they gave the property entirely to Mrs. Cummins without any right to me in it. I was willing to put the property in her name to hold as community interest as I had held it. Judge Hardy asked if we had decided to settle it, and Mrs. Cummins answered and said, 'That I had agreed to give her all the property in her name and half the money', and I said, 'Yes, sir'." With the exception of the facts as to the respondent's schooling, all these statements are disputed by the other witnesses. However, we must accept them as true for the purpose of this appeal.

The record shows that when respondent first called upon appellant at the hotel she refused a reconciliation, stating that she wanted "a divorce and half of the property—that which the law would give her". There was a conversation at that time regarding the fact that all the property stood of record in the name of respondent and it was in connection with this subject that respondent claims he offered to convey it to appellant, that she might hold the title. Our attention has not been called to any testimony of the wife directly stating that she understood that the conveyances would vest the title in her as her separate property. There was other testimony strongly tending to support appellant's contentions on this point, but at most it only created a conflict in the evidence which the trial court resolved against her. The evidence is presented on a bill of exceptions. The

answers given by the witnesses must be considered without reference to the questions asked, and often separated from their context. The trial judge heard the witnesses testify; observed their manner on the stand; heard the questions as well as the answers, and was aware of the testimony immediately preceding such answers. We cannot say under such circumstances that he was not justified in finding that appellant did not understand the force and effect of the conveyances.

The finding that ''the signature and agreement of plaintiff to said agreement and deeds was obtained by fraud and misrepresentation, and that plaintiff and defendant have each failed and refused to comply with the terms and conditions on the part of each to be performed, and that the consideration for the making, executing and delivering of said agreement and conveyances to the property transferred to defendant has wholly failed'' is not supported by the evidence. Respondent testified that when he hesitated to sign his wife said: ''Go ahead and sign; I will do right by you.'' This is not evidence of fraud in procuring the signature. But he contends that the fraud arose from the fact that appellant induced him to sign while she had no intention of performing on her part. Respondent's own testimony shows that appellant returned to him, and for three weeks thereafter, and until he commenced to abuse her, performed all the duties of a faithful and loving wife. In the divorce action the court found that his cruelty commenced at that time, and because of it, judgment was rendered for the wife. Under such circumstances, her refusal to submit to further abuse and mistreatment cannot be considered as evidence of an intention, at the time of making the agreement, not to perform.

It further appears that there was never a formal dismissal of the first divorce action, but the evidence is uncontradicted that on September 14, 1931, appellant notified her attorneys, in writing, to have it dismissed; that on the following day they appeared in court, moved to have it dismissed, and that the motion was granted. Under these circumstances, the failure to enter a formal dismissal is a mere technicality that should not be charged against appellant.

Neither are we impressed with the argument that there was a failure of consideration. The agreement and

deeds recited that they were made in consideration of love and affection. This has always been considered a sufficient consideration between husband and wife. (*Tillaux* v. *Tillaux*, 115 Cal. 663 [47 Pac. 691].) "Where dissension exists between a husband and wife, and they have become estranged on that account, the execution of a conveyance of property from the husband to the wife, which is free from fraud or undue influence, made as an inducement for reconciliation, harmony, and the renewal of marital relation, constitutes sufficient consideration for the execution of the instrument." (*Estate of Cover*, 188 Cal. 133 [204 Pac. 583]; *Chadwick* v. *Chadwick*, 95 Cal. App. 690 [273 Pac. 86].) Respondent argues that the real consideration for the conveyances was the agreement of appellant to forgive him the indignities and wrongs inflicted upon her, and to resume marital relations with him. Appellant did forgive respondent and did resume marital relations. Her failure to continue to do so resulted from the cruelties of respondent, and not, so far as the evidence reveals, from any desire to avoid her obligations under the contract. It would be strange, indeed, if the law should compel a wife to remain with a husband under these circumstances under penalty of losing her property. Appellant's agreement to resume marital relations was made in view of an agreement upon his part to treat her with consideration in the future. To hold that her refusal to live with him longer had resulted in a failure of consideration would be to hold that respondent might take advantage of his own wrong.

Other points are raised on this appeal but what we have said makes it unnecessary to discuss them. Although the evidence may have been insufficient to support all the findings under attack, the finding that neither party understood the force and effect of the acts in question is sufficient, alone, to support the judgment.

The second appeal is taken by the husband from parts of the decree in the divorce action. No attack is made on that part of the decree granting the wife a divorce or awarding her the custody of the child. All the real property and certain personal property was awarded to the wife and the husband was directed to pay to the wife, for the support of the child, the sum of $75 per month for three years and the sum of $50

per month thereafter during his minority. The child was fifteen years of age in April, 1932.

Appellant first questions the authority of the court to award all the real property to the wife, contending that part of it was his separate property. In support of this he calls attention to the fact that the Hollywood property was conveyed to the parties as joint tenants and argues that under the ruling in *Siberell* v. *Siberell,* 214 Cal. 767 [7 Pac. (2d) 1003], the respective interests of the parties were held by them as separate property.

■ Preliminarily, it should be said that respondent does not admit that the court awarded the property to her as her separate property, but states that she is simply given the use and income. The interlocutory decree provides that ''Sue Cummins is entitled, in lieu of any award for her support and maintenance, to a judgment awarding to her the possession, use and income from the real estate herein described, and entitled to a judgment assigning and awarding to her in and by any final decree of divorce which may be entered herein, as and for her own separate use and estate, the real estate described'', etc. This contemplates that the property shall become the separate property of the wife upon entry of the final decree. This appeal is the proper method of raising the question as to the court's power to make such a decree.

The case was tried upon issues raised by the wife's complaint, and by the husband's cross-complaint. ■ The complaint alleged that the property in question was her separate property. These allegations were denied by the answer. The husband's cross-complaint alleged that the property was community property and these allegations were denied by the answer to it. The court found that all the allegations of the cross-complaint were true. In this state of the record, appellant cannot complain of the finding simply because there were deeds in evidence showing that the property had been acquired under joint tenancy deeds. He did not seek to amend his cross-complaint, but throughout the trial relied upon the issues as framed by him, and testified that the property was community property; that it had been acquired during marriage by the efforts of the parties. He cannot contend otherwise for the first time on appeal.

■ Moreover, a conveyance of property to a husband and wife as joint tenants does not necessarily, and under all circumstances, preclude the idea of their holding the same as community property. The case of *Siberell* v. *Siberell, supra,* relied upon by appellant, was decided solely upon evidence that the property had been purchased with community funds and was deeded to the parties as joint tenants. There was no evidence, other than this, to indicate the intention of the grantees. In *Delanoy* v. *Delanoy,* 216 Cal. 23 [13 Pac. (2d) 513], the court, referring to the Siberell case, said: "This court has recently determined that *in the absence of an intent to the contrary,* when property is purchased with community funds and the title is taken in the name of the husband and wife as joint tenants, the community interest must be deemed severed by consent, and the interest of each spouse therein is separate property." (Italics ours.) In both the Siberell and Delanoy cases the contest was between one spouse and a third party. Aside from the joint tenancy deed and the evidence of purchase from community funds there was no evidence in those cases to show intention of the parties as to the status of the property. Here we have the testimony of both the husband and wife. The wife testified that it was community property before the deeds were executed under the reconciliation agreement. When these deeds were set aside this property was restored to its original character. Appellant testified that it was community property both before and after the execution of such deeds and was such at the time of trial. In the presence of such undisputed evidence of both owners, there can be no question of their intention to hold the property as community property regardless of the terms of the joint tenancy deed.

■ Appellant also contends that the award for the support of the child is excessive. Appellant testified that he had been in the carnival business for thirty years and had made good money at it. The evidence showed that respondent's only income was $50 a month from the rent of one of the houses. At the time of the settlement agreement appellant voluntarily agreed to convey the property to respondent and pay her $150 a month in addition, for the support of herself and the child. At the time of the trial of this action, there was a question whether the Texas bank could pay the money respondent still has on deposit there, but, considering

all the facts, we cannot say that the award for the child is excessive. The court is always open to respondent if he can show facts justifying a reduction in the amount awarded.

For the foregoing reasons the judgment in each of said cases should be and the same is hereby affirmed.

Thompson, J., and Pullen, P. J., concurred.