[Civ. No. 14404. First Dist., Div. One. Nov. 2, 1950.]

DOROTHEA A. TURKNETTE, Respondent, v. KENNETH EUGENE TURKNETTE, Appellant.

Simeon E. Sheffey and Ray E. Montrose for Appellant.

Schofield, Hanson & Sholars, Allison E. Schofield, Raymond L. Hanson, Brunswig Sholars and Thomas M. Jenkins for Respondent.

PETERS, P. J.—Plaintiff married defendant in 1939, and a child was born of such marriage. In June of 1948, after discovering that defendant had entered into another marriage in April of 1948, she instituted an action for separate maintenance, alleging extreme cruelty. Defendant filed an answer in which he denied that the parties were ever validly married. It is conceded that when defendant married plaintiff in 1939 he was in fact married to, and undivorced from, a first wife. While plaintiff and defendant were living together as husband and wife, and while plaintiff in good faith believed that she was married to defendant, they purchased a home in San Francisco and took title in joint tenancy. The trial court awarded the home to plaintiff, and also awarded her $100 a month for the support of the minor child, and $125 attorney's fees. Defendant appeals.

Plaintiff and defendant were married in Florida on April 8, 1939. The evidence shows, and defendant admits, that on June 27, 1938, defendant had married Harriett Hobbs, and that that marriage was not dissolved until August 23, 1940.

When plaintiff married defendant she believed in good faith not only that he was single, but that he had never been married. She testified that she would not have married him had she known he had been married before, because of her religious beliefs. Between the time of the marriage and 1945 the parties lived in various places as husband and wife. The plaintiff worked, and paid, out of her earnings, many of the debts of defendant, several of which were gambling debts. In June of 1945 they moved to San Francisco, where both secured employment. About November of 1945 they purchased a home here, the plaintiff making the down payment from funds she had earned. Later payments were made either from their joint checking account, to which both had made deposits, or from plaintiff's earnings. Title was taken in joint tenancy.

Commencing in 1946 defendant found employment first at Guam and later at Okinawa. He spent about six months on Guam, then a few months in San Francisco, and then went to work on Okinawa. While at Guam he sent plaintiff $200 a month, but, while working on Okinawa, payments to her were irregular. He continued to make intermittent payments for at least two months after this suit was filed. Sometime early in 1948 plaintiff learned, through defendant's employers, that he was living on Okinawa with a woman claiming to be his wife. Admittedly he had married Margaret Swan in April of 1948. Plaintiff testified that in September of 1948, defendant was earning about $650 per month.

Defendant, although having filed an answer and having been represented by counsel at the trial, did not personally appear, nor was his absence explained. His counsel produced evidence that in November of 1948 he had returned to Okinawa at a smaller salary than he formerly had earned. There was no evidence at all of his occupation or wages at the time of trial—January of 1949.

On this evidence the trial court made four basic findings: 1. Plaintiff married defendant in good faith and did not know that her marriage to him was void. 2. The parties have a minor child now 5 years old. 3. The home was acquired with community funds, for community purposes and paid for principally with the earnings of the wife, although the title was taken in joint tenancy; that said property "was intended to have a community character," and the plaintiff "is entitled to the whole of said real estate . . . as her equitable share

of the property acquired during the period of the existence of the de facto marriage." 4. Defendant is earning in excess of $300 per month.

Based on these findings the court awarded the house, $100 a month for the support of the child, and $125 attorney's fees to plaintiff.

The first major contention of defendant is that the trial court was without jurisdiction to make these awards to plaintiff in this separate maintenance action. Such an action is governed by section 137 of the Civil Code, and defendant argues that the court, under that section, is empowered to grant separate maintenance, and the other relief set forth in the section, only when there is a valid marriage. Defendant then contends that, although the equity court has power, in a proper action, to divide the property acquired during a void or voidable marriage, it has no jurisdiction to do so in a separate maintenance action.

The first premise of this argument is undoubtedly sound, the second is not. ▮ It is undoubtedly the law that the court must first find a valid marriage before it can grant separate maintenance. (*Colbert* v. *Colbert*, 28 Cal.2d 276, 279 [169 P.2d 633] ; *Calhoun* v. *Calhoun*, 70 Cal.App.2d 233, 237 [160 P.2d 923] ; *Chirgwin* v. *Chirgwin*, 26 Cal.App.2d 506, 508 [79 P.2d 772] ; see, also, 3 Nelson, Divorce and Annulment (2d ed., vol. 3), p. 373, § 32.08.) But it is equally true that a divorce cannot be granted, nor can there be a division of community property in the strict sense, unless there is a valid marriage. But the courts of this state, independent of statutory authority,[1] in the exercise of their broad equitable powers, have held that, where an unmarried couple live together as husband and wife, and where one, at least, honestly and in good faith believes he or she is married, he or she is a putative spouse and his or her property rights will be protected. In such cases the property acquired during the existence of such a relationship will be treated, as long as the rights of innocent third parties are not involved, as quasi community property. In such cases the courts look to the statutes dealing with divorce, annulment or separate maintenance not as a source of power, but as furnishing a standard to be used by way of analogy. (See note, 37 Cal.L.Rev. 671.)

---

[1]Although there is no statutory recognition of the property rights of a putative spouse, the Legislature has provided for the legitimacy and support of the children of a void marriage. (Civ. Code, §§ 84, 85.)

There are many cases applying these rules. (See, for example, *Coats* v. *Coats,* 160 Cal. 671 [118 P. 441, 36 L.R.A.N.S. 844]; *Schneider* v. *Schneider,* 183 Cal. 335 [191 P. 533, 11 A.L.R. 1386]; *Feig* v. *Bank of Italy etc. Assn.,* 218 Cal. 54 [21 P.2d 421]; *Figoni* v. *Figoni,* 211 Cal. 354 [295 P. 339]; *Sanguinetti* v. *Sanguinetti,* 9 Cal.2d 95 [69 P.2d 845, 111 A.L.R. 342]; *Macchi* v. *La Rocca,* 54 Cal.App. 98 [201 P. 143]; *Goff* v. *Goff,* 52 Cal.App.2d 23 [125 P.2d 848]; *Blache* v. *Blache,* 78 Cal.App.2d 168 [177 P.2d 345]; *Estate of Krone,* 83 Cal.App.2d 766 [189 P.2d 741].)

The last cited case—*Estate of Krone*—is a good example of how the courts look at the existing statutes relating to valid marriages to find and apply the same rules in determining the rights of a putative spouse in property. There the wife married Krone before she had received her final decree of divorce from a former husband. Krone died intestate. It was held that by statute the surviving spouse of a valid marriage inherits all the community property when the other spouse dies intestate. By analogy the putative wife should be entitled to the same right and inherits all of the jointly acquired property. Among other cases cited and relied upon in support of this conclusion (p. 769) is *Vallera* v. *Vallera,* 21 Cal.2d 681, 683 [134 P.2d 761], where it was declared that in such cases "the property is divided as community property would be upon the dissolution of a valid marriage."

Thus, although section 137 of the Civil Code only applies where there has been a valid marriage, and where the plaintiff is seeking and the court grants separate maintenance, that statute may be looked at by the equity court and used as a standard in determining what would be an equitable division of the jointly acquired property in such cases. That section provides that when a "husband or wife wilfully deserts the wife or husband, as the case may be, or when the husband or wife has any cause of action for divorce as provided in section 92 of this code,[2] he or she may, without applying for divorce, maintain in the superior court an action against her or him for

[2]Section 92, Civil Code: "Divorces may be granted for any of the following causes:
One. Adultery.
Two. Extreme cruelty.
Three. Wilful desertion.
Four. Wilful neglect.
Five. Habitual intemperance.
Six. Conviction of a felony.
Seven. Incurable insanity."

permanent support and maintenance of himself or herself . . . [and children]. . . . The court, in granting the husband or wife permanent support and maintenance of himself or herself, . . . in any such action, shall make the same disposition of the community property . . . as would have been made if the marriage had been dissolved by the decree of a court of competent jurisdiction.'' Under section 146 of the Civil Code, if the decree of the court is rendered on the ground of ''extreme cruelty, the community property shall be assigned to the respective parties in such proportions as the court, from all of the facts of the case, and the condition of the parties, may deem just.'' In such a case—where the divorce or separate maintenance is granted on the basis of extreme cruelty—the court may award, if the facts warrant it, more than one-half and up to all of the community property to the innocent spouse. (*Finnegan* v. *Finnegan*, 64 Cal.App.2d 109, 111 [148 P.2d 37]; *D'Arcy* v. *D'Arcy*, 89 Cal.App. 86, 89 [264 P. 497].) We think that the same power exists in connection with the property rights of the putative spouse, and that this is so whether the action starts as one for divorce, annulment or separate maintenance. In other words, in such cases, the court possesses the same power over the jointly acquired property as it would have had the marriage been a valid one.

The present complaint for separate maintenance was predicated upon the charge of extreme cruelty, but the trial court failed to make a finding on that issue, apparently because it felt that such finding was unnecessary because it could not grant separate maintenance for the reason that the marriage was void. During the trial, however, the court stated that ''there is sufficient testimony to show cruelty.'' Such a finding should have been made. Unless such a finding is required, a putative spouse might, where cruelty is not shown, be in a better position than a legal spouse. In the instant case there is no evidence as to what portion of the jointly acquired property is represented by the house. If it represents more than one-half, before it can all be assigned to the wife, a finding of cruelty should be required. The defendant, of course, knew that he had been charged with extreme cruelty. He absented himself from the trial and presented no evidence on that issue. The evidence of the wife is uncontradicted. It demonstrates to a certainty that the husband was guilty of extreme cruelty as that marital offense is defined in section

94 of the Civil Code.[3] That being so, this is a proper case for this court to make the omitted finding. Article VI, section 4¾ of the California Constitution, as adopted in 1926, authorizes the Legislature in all civil cases where trial by jury is not a matter of right or has been waived, to grant to appellate courts "the power, in its discretion, to make findings of fact contrary to, or in addition to, those made by the trial court. The Legislature may provide that such findings *may be based on the evidence adduced before the trial court, either with or without the taking of additional evidence* by the court of appellate jurisdiction." (Italics added.)

Acting pursuant to this constitutional grant of power, the Legislature, in 1927, added section 956a to the Code of Civil Procedure. That statute provides that the appellate courts may make additional findings in civil nonjury cases, and that such *"findings may be based on the evidence adduced before the trial court either with or without the taking of evidence by the court of appellate jurisdiction,* pursuant to such rules as the Judicial Council may prescribe.

". . . This section shall be liberally construed to the end, among others, that wherever possible causes may be finally disposed of by a single appeal and without further proceedings in the trial court . . ." (Italics added.)

█ Pursuant to the power thus conferred, this court now finds that during the time these parties lived together as husband and wife the defendant wrongfully inflicted acts of extreme cruelty on plaintiff which caused the plaintiff grievous mental suffering. The acts of extreme cruelty need not be any more fully detailed.

█ Now that the findings have been so amended there can be no doubt at all, under the cases heretofore cited, that the trial court had jurisdiction to award the home of the parties acquired after the date of the abortive marriage to the plaintiff, and to award to her a reasonable sum for the support of the child, and a reasonable attorney's fee.

The defendant next contends that, even if this power exists as to quasi community property acquired during such a relationship, it can only be exercised in respect to property that would have been community property had the marriage been valid, and cannot be exercised as to the separate property of

---

[3]Section 94, Civil Code: "Extreme cruelty is the wrongful infliction of grievous bodily injury, or grievous mental suffering, upon the other by one party to the marriage."

the husband, and particularly cannot be exercised in reference to an interest held by him in joint tenancy. It is undoubtedly the law that the power of the court to assign property upon dissolution of a valid marriage does not extend to interests held in joint tenancy. (See cases collected 3 Cal.Jur. 10-Yr. Supp. p. 669, § 151.)  ▮  In this connection the trial court found that after the marriage ceremony, and while the parties were living together as husband and wife, they acquired the real property here involved, and that the plaintiff "is entitled to the whole of said real estate . . . as her equitable share of the property acquired during the period of the existence of the de facto marriage . . ., said property having been acquired with community funds, for community purposes, and paid for principally with the earnings of the wife, although title was actually taken in joint tenancy. Said property was intended to have a community character." Defendant argues that there is no evidence to support this last sentence of the quoted finding.

Joint tenancy and community property are, of course, mutually exclusive tenures. Although there is a statutory presumption (Civ. Code, § 164) that property acquired by a husband and wife by an instrument so describing them is community property, this presumption may be defeated when the instrument also provides that the husband and wife are to take as joint tenants. (*Siberell* v. *Siberell*, 214 Cal. 767 [7 P.2d 1003].)

However, the fact that the deed describes the grantees as joint tenants "does not necessarily, and under all circumstances, preclude the idea of their holding the same as community property." (*Cummins* v. *Cummins*, 7 Cal.App.2d 294, 304 [46 P.2d 284].) The cases make it clear that evidence can be admitted to show that the property was intended to be community even though it was acquired and held in joint tenancy. (*Tomaier* v. *Tomaier*, 23 Cal.2d 754 [146 P.2d 905] ; *Sears* v. *Rule*, 27 Cal.2d 131 [163 P.2d 443] ; *Huber* v. *Huber*, 27 Cal.2d 784 [167 P.2d 708] ; *LaMar* v. *LaMar*, 30 Cal.2d 898 [186 P.2d 678] ; *Rotea* v. *Rotea*, 93 Cal.App.2d 827 [209 P.2d 963].) Thus, the real problem in the instant case is whether there is evidentiary support for the finding that the home was intended to be community property.  ▮  A finding of either separate or community character, just as in the case of other findings of the trial court, is binding upon the appellate court if it is supported by substantial evidence or by reasonable inferences therefrom. (*In re Rauer's Collec-*

*tion Co.,* 87 Cal.App.2d 248, 256 [196 P.2d 803]; see cases collected 3 Cal.Jur. 10-Yr. Supp. p. 573, § 75.) This well settled rule was stated as follows in *Jansen* v. *Jansen,* 127 Cal.App. 294, 298 [15 P.2d 777], as follows: "Dispensing with any academic discussion or review of the authorities it is now generally conceded and recognized that the courts are invested with full power to determine the status of the property of both or each of the spouses, regardless of the name of either in which title to such property stands, and the recitals of whatever transfers there may have been between the spouses regarding such property or in transfers to one or the other, are merely *prima facie* evidence of ownership, and raise only disputable presumptions as to whether such property is the separate or community property of the parties."

In most of the cases in which the court has found the property held by a deed in joint tenancy was in fact community property, there was direct evidence of the intention of the parties. Usually the interested spouse testifies that the joint tenancy form of tenure was used solely to avoid probate proceedings, and that the parties intended to hold the property as community property. But there is no requirement that such formalistic evidence must appear in the record. The trial court is required to ascertain the intention of the parties, and that intent may be found not only in direct but also in circumstantial evidence. Many times the circumstances disclose the intent far more eloquently than does the direct evidence of an interested party. This is such a case.

■ Here the evidence discloses that plaintiff married defendant in the good faith belief that he was unmarried and never had been married. She lived with him some eight years in that belief. Less than a year before defendant married plaintiff he had married another woman, and that marriage was not dissolved until a year after defendant married plaintiff. After the marriage of plaintiff and defendant, the evidence shows that at all times plaintiff worked, and that defendant lived with and supported her only intermittently. The down payment on the house was made from the earnings of plaintiff. Some of the later payments were made from the joint bank account of the parties, and some from the wife's earnings after the separation of the parties. During the marriage, the wife helped to pay off, from her own earnings, defendant's gambling and other debts. She made a home for

him and their child. When the deed was taken in joint tenancy she had no intent of creating separate interests in the property. As she testified, she paid for the property and other things with "the money we had, we are man and wife, we didn't have two separate affairs—accounts, we lived as man and wife, and we shared alike, that is exactly true . . . we would go ahead and take care of the obligations we acquired together, . . ." When this property was acquired, the wife believed and intended it to be marital property. This defendant has committed a most cruel fraud upon plaintiff and now seeks to gain an unfair advantage from this fraud. He married her when he had another undivorced wife living. He then went on and humiliated the plaintiff by marrying a third wife. Without any explanation of his failure to be in court, he absented himself from the trial. Now he wants to take advantage of a technical rule of law and claims that he has a joint tenancy interest in the property which was largely purchased from plaintiff's earnings. The circumstances and inferences from the evidence demonstrate to a certainty that the challenged finding is amply supported.

The findings are amended by adding thereto the finding heretofore set forth; the judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied December 2, 1950, and appellant's petition for a hearing by the Supreme Court was denied December 26, 1950.