[Civ. No. 15465.   First Dist., Div. One.   June 1, 1953.]

EDNA C. EDWARDS, as Executrix, etc., Respondent, v. GEORGE H. DEITRICH, Appellant.

John M. Hoffman, Howard C. Erickson, Robert V. Winkler and Hoffman & Erickson for Appellant.

Houlihan, Manuel & Brown for Respondent.

PETERS, P. J.—Does the evidence support the findings that real property purchased with community funds but deeded to a husband and wife in joint tenancy in fact was at all times or by subsequent oral agreement held by the parties as community property? That is the basic question presented on this appeal. This is the type of question that is always difficult for a trial court to answer, and that has been the fertile source of much litigation.

This is an action for declaratory relief, to quiet title and to recover possession of certain property brought by the executrix of the will of Della Deitrich against her surviving husband, it being claimed that the two parcels of realty involved were community property of defendant and his deceased wife. The trial court found that the property involved was community, and entered its judgment accordingly. Defendant husband appeals, contending that there is no substantial evidence to support the findings, or to rebut the pre-

sumption arising out of the form of the deeds. We agree with this contention.

The challenged findings read as follows:

"That on the 17th day of September, 1950, the decedent and the defendant orally agreed that all of their real and personal property was community property; that, on said date, the decedent and the defendant orally agreed to dispose of all of their real and personal property, by will, as community property;

"That, notwithstanding the form of deed in which the decedent and the defendant took title to the real properties . . . , the decedent and the defendant at the time of the acquisition of said properties did not know nor understand the legal effect of the joint tenancy form; that, notwithstanding the form of deed by which the decedent and the defendant took title to the real properties . . . , the decedent and the defendant, on and after the respective dates when said properties were acquired, continued to consider their said properties as community property and dealt with and treated the same as such."

The Deitrichs were married in Oklahoma in 1928. They came to California in 1931. Mrs. Deitrich had two children by a previous marriage, Edna Edwards, the plaintiff, and Sue Nelson, both of whom are devisees under their mother's will. From the time of their marriage in 1928 to October 1, 1950, the date of Mrs. Dietrich's death, the parties lived together as husband and wife. The husband first worked as a waiter and subsequently as a restaurant proprietor, while Mrs. Deitrich worked as a teacher and saleslady, and occasionally worked in her husband's restaurant. Their earnings, at least after they came to California, were placed in a joint bank account. In California, the parties purchased, with funds jointly earned after marriage, a chicken ranch in San Leandro. This chicken ranch was thereafter sold, the husband and wife taking as security a deed of trust valued, at the time of trial, at about $9,500. Admittedly, this deed of trust is community property, and, admittedly, Edna and Sue, under the will of decedent, are each entitled to one-quarter of its value. Title to this ranch, until its sale, was taken in the name of decedent alone, defendant explaining that his wife was opposed to the possibility of his relatives inheriting from him, and that he consented to this form of the deed to avoid arguments. Profits from this ranch, and money received upon its sale, were used by the Deitrichs to buy the two parcels here involved—the

Hays Street property in San Leandro and the Fairview property in Hayward. Titles to these two parcels were taken in joint tenancy at the time of each purchase, and so remained at the time of Mrs. Deitrich's death.

The first parcel purchased was the Hays Street property, which was purchased in 1947. It should here be mentioned that the evidence shows that Mrs. Deitrich was the dominant spouse in this marriage, and handled the financial transactions of the parties.

Before the parcel was purchased defendant asked his wife how the deed was to be made out, to which she replied, "joint tenancy. . . . For the simple reason that you have a lot of brothers and sisters, you and I never had any children of our own, and I don't want any of the brothers and sisters to come in for any part of it; therefore, we have a joint tenancy." Defendant agreed. This property was a four-plex. The deposit receipt and the buyers' instructions provided that the property should be conveyed to them as "husband and wife in joint tenancy." The money for this property came from the joint bank account of the parties. This parcel is valued at $20,000, subject to a mortgage of about $4,600.

The parties lived on this property until they purchased the home or Fairview property in Hayward in 1949. This, too, was taken in joint tenancy. The real estate saleswoman who consummated the deal testified that she was directed by the Deitrichs to make the deed in joint tenancy, and when she started to explain the legal effect of such a deed she was interrupted by Mrs. Deitrich who said: "That is all right; I know what joint tenancy is." The deposit receipt was signed by both Deitrichs in her presence, and it and the buyers' instructions directed that the deed be taken in joint tenancy. This property was sold in September, 1950, for $14,000, subject to a balance owing of $5,600 and the money impounded to await the outcome of this lawsuit.

Defendant, on cross-examination, was asked about his understanding of joint tenancy. He testified that he understood the meaning of the term at the time the conveyances were made, such understanding being that: "Joint tenancy is for the protection of both parties, and the survivor automatically inherits the other half."

In September of 1950 Mrs. Deitrich was quite ill. Plaintiff had been taking care of her mother in the Fairview home. On the morning of September 17, 1950, plaintiff and de-

fendant were preparing to arrange for hospital care for Mrs. Deitrich when an important conversation took place between plaintiff and Mr. and Mrs. Deitrich. Mrs. Deitrich, according to plaintiff, stated: ''George, if anything happens to me I would like, I think—I would like that one-third of all the property we have—one-third would go to Edna, one-third to Sue and one-third to you.'' Defendant replied: ''I think that is all right.'' Mr. Deitrich denied that any conversation took place before the wills were executed.

After the plaintiff and defendant came back from making arrangements at the hospital Mrs. Deitrich asked for a pencil and stationery, stating that she wanted to draft a will. These were brought to her and she was left alone for over an hour. Then a conversation took place in the bedroom. Present, beside Mrs. Deitrich, were her husband, the plaintiff, and a notary public who had arrived to supervise the execution of the deed to the Fairview property. Plaintiff testified that Mrs. Deitrich had her, and then defendant, read the holographic will she had prepared; that she then asked them if its provisions were all right; that plaintiff asked her mother about provision for the grandchildren, and that Mrs. Deitrich stated that she would trust her daughters to take care of them. Defendant admitted that he glanced over the will and stated that it was ''O.K.'' Plaintiff then testified that her mother then told defendant he should make a will and gave him a pencil and piece of paper; that defendant sat beside the bed and wrote out his will and handed it to his wife; that she read it and handed both wills to plaintiff and directed her to ''file'' them. Defendant corroborated this portion of plaintiff's testimony, stating that when his wife asked him to make a will he replied: ''If it will please you, yes.''

Both wills were admitted into evidence, over objection, counsel for plaintiff stating that they were not being offered as joint wills or as evidence of any written agreement between the parties. Mrs. Deitrich's will has been admitted to probate, and plaintiff appointed executrix.

The holographic will of Mrs. Deitrich reads as follows:

''Sun. Sept. 17—1950

''This is my last will and testimony.

''I hereby bequieth my share of all community property to my 2 daughters. Edna C. Edwards and Sue Callie Nelson to be divided equally. Sue's share to purchase a home for her and boys  Personal things to do with as they like.

"I appoint Edna Edwards as the administor.

/a/ Della Deitrich"

The unprobated holographic will of defendant reads as follows:

"Sept 17—50.

"This is my last Will

"I hear by Authorize my Wife Della Deitrich sole heir to all my Estate

"Or her 2 Daughters ⎧To be Divided⎫

"Mrs. Edna Edwards ⎨Equally ⎬
"Mrs. Sue Nelson ⎩ ⎭

Geo H Deitrich"

Plaintiff, on cross-examination, testified that when her mother handed her the two wills, she stated: "I want my share of my property—my share of our property to go to my—to you and to your sister, Sue."

A cousin of plaintiff who was in the house that day testified that when defendant came out of his wife's room he stated that they had just made wills. He was asked how he had made his. He stated that his wife had left her "share" to the "girls," and "What the hell, when I am gone the girls can have mine—the girls and the grandchildren."

The notary was not called as a witness.

Defendant testified that the only conversation about the wills he had with his wife after she had drafted her will, had to do with where he intended to live if she should die. Then his wife stated that in her will: "I leave my half of the community property" and had appointed Edna "to be executionist." Defendant asked "Not over me?" to which she said "No, just over Sue," that is "over Sue's half."

Plaintiff also testified that later that same day defendant told her that if his wife should die "we will have to dispose of the Four-Plex as Sue will probably want her share of it when the time comes." Defendant denied this conversation. Plaintiff also testified that in May of 1951, defendant stated to her: "Edna, to tell you the truth I thought all the property was community property." This too was denied by defendant.

This is a fair summary of the relevant testimony. What does it disclose, and what are the rules of law applicable to it? The trial court has found, as one of its two alternative theories, that in spite of the form of the deeds to the two parcels, the

property remained and the parties treated it as community property. That finding is totally unsupported. The evidence shows that the two parcels were purchased by funds acquired after marriage, that the deeds were intentionally taken in joint tenancy, and that Mrs. Deitrich declared she knew what that meant. There is not one word of evidence that at the time of purchase the parties orally agreed or understood that the property should remain community, nor is there one word of evidence that thereafter the parties treated the property as community property. In fact, the evidence is to the contrary. If this judgment can be sustained, it must be sustained on the other alternative finding that on the 17th of September, 1950, the decedent and her husband orally agreed that all of their property should be community property.

The law applicable to this problem is reasonably clear. ■ The statutory presumption that property acquired after marriage except by gift, will, devise, or descent is community is rebutted by evidence that the property was taken in joint tenancy. ■ That form of conveyance not only rebuts the community property presumption, but itself raises the rebuttable presumption that the property is as described in the deed, and places the burden on the party claiming the property to be community to prove that fact. (*King* v. *King*, 107 Cal.App.2d 257 [236 P.2d 912]; *Delanoy* v. *Delanoy*, 216 Cal. 23 [13 P.2d 513]; *Tomaier* v. *Tomaier*, 23 Cal.2d 754 [146 P.2d 905]; *Walker* v. *Walker*, 108 Cal.App.2d 605 [239 P.2d 106]; *In re Rauer's Collection Co.*, 87 Cal.App.2d 248 [196 P.2d 803].)

■■ It is also the law that by oral agreement a husband and wife can convert community property into separate, and vice versa, and that evidence of such agreement will rebut the presumption created by the form of the deed. (*Tomaier* v. *Tomaier*, 23 Cal.2d 754 [146 P.2d 905]; *Title Ins. & Trust Co.* v. *Ingersoll*, 153 Cal. 1 [94 P. 94]; *Vieux* v. *Vieux*, 80 Cal. App. 222 [251 P. 640]; *Estate of Kelpsch*, 203 Cal. 613 [264 P. 214]; *Estate of Raphael*, 91 Cal.App.2d 931 [206 P.2d 391]; *Kenney* v. *Kenney*, 220 Cal. 134 [30 P.2d 398]; *Stice* v. *Stice*, 81 Cal.App.2d 792 [185 P.2d 402]; *Estate of Sill*, 121 Cal. App. 202 [9 P.2d 243]; *Sears* v. *Rule*, 27 Cal.2d 131 [163 P.2d 443].)

But it is the rule that in order that property may be converted from one form to another there must be relevant evidence of an agreement to that effect. ■ The mere fact one of the parties has a mistaken belief about the nature of

the property, or has an intent uncommunicated to the other spouse about converting the property from one form to another, or expresses such an intent by will, will not rebut the presumption raised by the form of the deed. (*Socol* v. *King,* 36 Cal.2d 342 [223 P.2d 627] ; *Cash* v. *Cash,* 110 Cal.App.2d 534 [243 P.2d 115] ; *Watson* v. *Peyton,* 10 Cal.2d 156 ·[73 P.2d 906].)

In the instant case, as already pointed out, at least until September 17, 1950, there is not one word of testimony that either party intended, and certainly no evidence that the parties had agreed, that the two pieces of property were to be held in any other way than was described in the deeds of conveyance, that is, in joint tenancy. What happened on September 17, 1950, did not amount to a consummated agreement to convert the property from joint tenancy to community.

Certainly the fact that Mrs. Deitrich stated in her will that she bequeathed ''my share of the community property'' to her two daughters, is no evidence at all that the parties had agreed that these two parcels were part of the estate to be bequeathed under this provision. These parties owned not only personal effects, etc., as community property, but also owned a deed of trust worth $9,500 as community property, and one-half of the wife's share is admittedly bequeathed to the plaintiff and her sister by the will. Mrs. Deitrich knew that these two parcels were held in joint tenancy and not as community property, had directed that the two deeds should so provide, and had declared that she knew the effect of taking title in joint tenancy. She was the business manager of this marriage. In the absence of any testimony to the contrary we must assume that the reference in the will to ''community property'' meant just that, and did not include joint tenancy property.

Nor do the conversations held on September 17, 1950, assist plaintiff. In the first conversation Mrs. Deitrich expressed a wish that if ''anything happened'' to her she would like one-third of ''all the property we have'' to go to Edna, one-third to Sue, and one-third to her husband. Defendant is supposed to have said: ''I think that is all right.'' That falls far short of an agreement to convert joint tenancy property into community. Not one word was said about converting property from one form to another. The conversation simply amounted to a proposition to her husband as to how she would like the property to be willed. But if the property were converted to community, she could only will

away one-half, that is, one-quarter to each daughter. Plaintiff admits, as seems obvious, that this was not an agreement to execute joint wills. That being so, it amounted to no more than a hope expressed by the dying Mrs. Deitrich as to how she would like the property to go. It is no evidence at all of an agreement to convert the property into community property.

The same can be said about the conversation after Mrs. Deitrich's will was executed. Her husband read the will and said it was "O.K." Certainly that does not prove an agreement that what the decedent referred to as "community property" should include the two parcels here involved. Then at Mrs. Deitrich's request defendant made a will. By that will defendant left his entire estate to his wife, or (apparently if she died first) then equally to the two daughters. By no stretch of the imagination does that document evidence any agreement that the two daughters were ever to have any rights during defendant's lifetime.

This evidence falls far short of supporting the finding that on September 17, 1950, the parties "orally agreed that all of their real and personal property was community property." ▮ When property is placed in joint tenancy it is no longer held as community property. The presumption arising out of the form of the deed can be rebutted, but it can only be rebutted so far as a subsequent conversion is concerned by evidence that the parties agreed upon a present conversion of the property from one form to another. ▮ The mere fact that one of the parties would like to will away more than her share, and the other party orally acquiesces, is not sufficient to convert the property from joint tenancy to community. That is all that exists here.

The judgment appealed from is reversed.

Bray, J., and Wood (Fred B.), J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied July 28, 1953.