[Civ. No. 20186.   Second Dist., Div. One.   July 19, 1954.]

FRANCES ELAINE SCHINDLER, Plaintiff and Appellant, v. RAYMOND C. SCHINDLER, JR., Defendant and Appellant.

598

Hahn, Ross & Saunders for Plaintiff and Appellant.

Clarke & Gleis and Stanley N. Gleis for Defendant and Appellant.

600

MOSK, J. pro tem.*—Declaring that it was impossible to continue to live together as husband and wife, respondent commenced an action against appellant for divorce on October 1, 1952. In her complaint she alleged that certain real property known as 14041 Roblar Road, Sherman Oaks, California, was community property.

Her specific averment in that regard was ''that the title to said property stands of record in the names of the parties hereto as joint tenants for the purpose of convenience only and for no other reason, and said property was intended between the parties hereto to be at all times and now is their bona fide community property.'' Appellant answered that ''it was at all times since the acquisition of the said property and is now the intention of the parties that the said property be held by them as joint tenants.''

After trial held on June 23, 1953, the court found ''That it is true that the real property hereinabove described stands of record in the names of plaintiff/cross-defendant and defendant/cross-complainant as joint tenants, but that in truth and in fact, said property is the bona fide community property of the parties hereto.'' Pursuant to the foregoing finding that it was community, the trial court awarded the property to respondent, to whom it granted an interlocutory decree of divorce on the ground of extreme and habitual cruelty. From that portion of the decree relating to the real property, appellant has appealed, maintaining the realty is in fact joint tenancy.

Testimony at the trial revealed that the parties were married in Connecticut and during their marriage acquired a home in Pennsylvania, that residence having been sold when they moved to California in about 1949, at which time the Sherman Oaks residence was purchased. In connection with the acquisition appellant borrowed $3,000 from his father to apply on the purchase price and that sum has not been repaid. Testimony of the respondent was in essence that she did not understand the meaning of joint tenancy, that no one explained its nature or effect to her, that she signed the papers in connection with the transaction, that she thought the property ''belonged to both of us'' and that it was community property, and that all payments made on the property came from appellant's earnings. She further stated on cross-examination that there had been no discussion between her and appellant

*Assigned by Chairman of Judicial Council.

as to how title should be taken. She also admitted that she did not know anything about community property at that time.

The sole question presented on this appeal is whether the trial court properly determined that the real property was in fact community property and therefore subject to disposition in the divorce proceedings.

It is common knowledge that innumerable husbands and wives with little or no information about estates in real property acquiesce without reflection in the suggestion that they place purchased property in joint tenancy. This estate, of course, has certain advantages. Usually not until marital discord reaches the critical stage of dividing community assets does one of the spouses—generally the one found to be innocent of wrong-doing and therefore entitled to more than half of the community property—first learn of the disadvantages of joint tenancy. At that point the issue of lack of comprehension, or absence of consent to the creation of the joint tenancy estate inevitably arises. Rare indeed is the contested divorce case today in which the trial court is not concerned with this issue.

The basic law applicable to this problem is reasonably well settled. It is in some of the refinements that we find what appears at first blush to be a conflict in the cases.

From the very nature of the estate, as between husband and wife, a community estate and a joint tenancy estate cannot exist at the same time in the same property. (*Tomaier* v. *Tomaier*, 23 Cal.2d 754, 758 [146 P.2d 905].) This was established in *Siberell* v. *Siberell*, 214 Cal. 767 [7 P.2d 1003], the court there further holding (p. 773) that "use of community funds to purchase the property and the taking of title thereto in the name of the spouses as joint tenants is tantamount to a binding agreement between them that the same shall not thereafter be held as community property but instead as a joint tenancy with all the characteristics of such an estate."

The statutory presumption that property acquired after marriage except by gift, bequest, devise, or descent is community property (Civ. Code, §§ 162, 163, 164) is successfully rebutted by evidence that the property was taken in joint tenancy. (*Edwards* v. *Deitrich*, 118 Cal.App.2d 254, 260 [257 P.2d 750].) The fact that a deed was taken in joint tenancy establishes a prima facie case that the property is in fact held in joint tenancy. (*King* v. *King*, 107 Cal.App.2d 257, 259 [236 P.2d 912].) There is actually a presump-

tion that the property is as described in the deed and the burden is on the party who seeks to rebut the presumption. (*Edwards* v. *Deitrich, supra.*) ■ The form of the deed cannot be lightly disregarded. Even with evidence of contrary intent, the deed alone creates a conflict of fact. (*Cox* v. *Cox,* 82 Cal.App.2d 867, 870-871 [187 P.2d 23].) ■ As stated in *In re Rauer's Collection Co.,* 87 Cal.App.2d 248, 257 [196 P.2d 803], ''The form of the conveyance is itself some evidence of the intent to change it from community property, and creates a rebuttable presumption to that effect.''

On the other hand, a conveyance of property to a husband and wife as joint tenants does not necessarily, and under all circumstances, preclude the idea of their holding the same as community property. (*Cummins* v. *Cummins,* 7 Cal.App.2d 294, 304 [46 P.2d 284].) ■ It is clear that a husband and wife may convert community into separate property, and vice versa, by agreement between themselves, and that persuasive evidence of such an understanding will rebut the presumption created by the form of the deed. (*Edwards* v. *Deitrich, supra.*) ■ Parol evidence is admissible to show that a husband and wife who took property as joint tenants actually intended it to be community property, the purpose being to prevent the use of common law forms of conveyance to alter the community character of real property contrary to the intention of the parties. (*Tomaier* v. *Tomaier, supra,* p. 757.) ■ In *Thomasset* v. *Thomasset,* 122 Cal.App.2d 116, 133 [264 P.2d 626], the court indicated ''Property may be found to be other than that indicated by the deed when there is an oral or written agreement as to the ownership of the property, or where such understanding may be inferred from the conduct and declarations of the spouses.''

■ The purchase of property with community funds is insufficient standing alone to establish that property is community property. (*In re Rauer's Collection Co., supra,* at p. 257.) ■ The presumption arising from the form of the deed may not be rebutted solely by evidence as to the source of the funds used to purchase the property. (*Gudelj* v. *Gudelj,* 41 Cal.2d 202, 212 [259 P.2d 656].) ■ However, it may be controverted by testimony indicating the ''intention, understanding or agreement of the parties.'' (*Socol* v. *King,* 36 Cal.2d 342, 345 [223 P.2d 627].) Respondent has emphasized the disjunctive character of the foregoing phrase, and maintains her intention alone will suffice to establish the property held in joint tenancy to be actually community.

Neither the facts nor the outcome of *Socol,* however, lend her much comfort. For the unanimous court there determined that the unrevealed intention of one party alone for the property to remain a part of the community is not effective.

At this point we reach two cases upon which respondent heavily relies. Superficially they appear to conflict with the foregoing rules, but we believe they can be reconciled.

In *Palazuelos* v. *Palazuelos,* 103 Cal.App.2d 826 [230 P.2d 431], the court affirmed a holding that property was community although the only evidence mentioned indicated the wife did not intend the property to be purchased in joint tenancy. Apparently there was no finding as to the husband's or their mutual intention. In *Turknette* v. *Turknette,* 100 Cal.App.2d 271 [223 P.2d 495], although the court said (p. 279) "The trial court is required to ascertain the intention of the parties, and that intent may be found not only in direct but also in circumstantial evidence," it found as the principal circumstance (p. 280) that "she had no intent of creating separate interests in the property." Here again, what the husband or the parties jointly intended or understood was not discussed.

The husband has the management and control of the community property, but he cannot make a gift of it without the written consent of the wife. (Civ. Code, § 172.) The restrictions upon the husband's control are solely for the benefit of the wife, or as stated in *Estate of McNutt,* 36 Cal.App.2d 542, 552 [98 P.2d 253], for her protection "from the prodigality of a reckless or faithless husband." It is not necessary to determine whether transferring community funds into joint tenancy property is a gift or other disposition, for it has been held that in so acting a husband, despite his powers of management of the community, is subject to the limitations of sections 172 and 172a of the Civil Code. As stated in *Britton* v. *Hammell,* 4 Cal.2d 690, 692 [52 P.2d 221], "Our law does not contemplate this means of dividing the community property. It provides only for division after dissolution of the community by death or divorce, or by transfer by the husband with the wife's consent . . ."

In *Socol, Edwards, Tomaier, Cox* and other cases herein discussed, the wife joined in the transaction by which the property was converted into joint tenancy. This amounted to the consent required by Civil Code sections 172 and 172a. In *Palazuelos,* however, she did not consent and that element apparently influenced the result. For the court, while not

revealing all pertinent facts in the abbreviated opinion, discussed the wife's participation in *Watson* v. *Peyton,* 10 Cal.2d 156 [73 P.2d 906], and then stated (p. 827) "Such circumstances did not exist in the instant case." *Turknette* presented a somewhat more complicated problem, since a putative marriage was involved.

It would seem, therefore, that if the husband exceeded his authority of management by transferring community property into joint tenancy property without the wife's written consent or participation, she should be able to reclaim the property for the community by showing her own intent, even though undisclosed, that it retain its community character.

Although there is a statutory period for the institution of an independent action to avoid deeds of that character (Civ. Code, § 172a) it would appear this is for the protection of third parties who might rely on the recorded instruments. As cautioned in *Siberell* (p. 772) it should be noted that we are dealing here strictly with the controversy between the parties to the marriage and are not determining standards by which the characteristics of the property are ascertained when the claims of judgment creditors or the rights of third persons are involved.

But if the wife consented to or participated in the transfer to joint tenancy by any act in writing, then she may no longer avail herself of the protection of Civil Code sections 172 and 172a, and the presumption that the property is held as the deed recites it to be held may be rebutted only by convincing testimony of the mutual understanding of the husband and wife. For a discussion on this entire subject see Brown and Sherman *Joint Tenancy or Community Property: Evidence,* volume XXVIII Journal of the State Bar of California, page 163 ff. For discussions of consent by acts constituting subsequent ratification, see 7 American Law Reports (2d) 299, 309, 333, 342.

In the instant case, the wife signed the papers involved in the purchase of the property. In so doing, and in the absence of fraud or misrepresentation, she clearly participated in the transaction and thereby consented in writing to the transfer of community funds to joint tenancy property. Respondent further testified in response to interrogation that she "just thought it belonged to both of us" and believed that it was community property. There is no testimony in the record that she revealed those evanescent thoughts to appellant

or to anyone else. On cross-examination she conceded she had not discussed the manner of taking title with appellant.

This, then, is a precise duplicate of the unilateral and uncommunicated intention that existed in *Walker* v. *Walker*, 108 Cal.App.2d 605 [239 P.2d 106], the court there holding it utterly insufficient to meet the burden of establishing the property to be community. ▮ The wife having consented in writing to "the execution of the joint tenancy deed, she cannot defeat her act by testimony of a hidden intention not disclosed to the other party at the time of the execution of the document," said the court in *Watson* v. *Peyton, supra*, at page 158, adding that ". . . all the restrictions of sections 172 and 172a of the Civil Code were met . . ."

▮ It is of no significance that the respondent stated she was unaware of or mistaken about the legal effect of the deed. Nor is it material that the home was purchased primarily from community funds. Those facts, taken together, provide no basis for an inference of a mutual understanding or agreement between the husband and wife that the community nature of the property was to be preserved regardless of the form of the deed. (*Gudelj* v. *Gudelj, supra.*) The evidence falls far short of supporting the allegation of the complaint that "said property was intended between the parties hereto to be at all times and now is their bona fide community property." In fact, there was no evidence of an agreement, nor any evidence from which it can be inferred that the parties, as distinguished from one party alone, intended the parcel to be community property. (*Walker* v. *Walker, supra*, p. 609].) ▮ Therefore, the trial court was in error in attempting to dispose of the property in the divorce action. It is well settled that unless real property held in joint tenancy is in fact a community asset, the court in an action for divorce is without power to make disposition of such property. (*Walker* v. *Walker, supra.*)

Therefore that part of the interlocutory decree of divorce purporting to award the real property to respondent is reversed; cross-appellant having abandoned her cross appeal, it is dismissed, and the decree in all other respects is affirmed.

White, P. J., and Drapeau, J., concurred.