## LANG v. COMMISSIONER OF INTERNAL REVENUE.

### No. 3302.

Circuit Court of Appeals, Fourth Circuit.

Oct. 3, 1932.

Washington Bowie, Jr., of Baltimore, Md., for petitioner.

J. Louis Monarch, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key and Wm. Cutler Thompson, Sp. Assts. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and O. J. Tall, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for respondent.

Before NORTHCOTT and SOPER, Circuit Judges, and WATKINS, District Judge.

NORTHCOTT, Circuit Judge.

This is a petition to review a decision of the United States Board of Tax Appeals (23 B. T. A. 854), affirming a determination of a deficiency in income tax, by the Commissioner of Internal Revenue, against the petitioner, for the year 1925, in the amount of $1,355.81.

In 1915, Walter B. Lang and his wife, the petitioner, purchased a piece of residential property in Catonsville, Md., at a cost of $13,000, of which amount the husband contributed $11,440, and the petitioner $1,560. Title was taken by the purchasers as tenants by the entireties. Thereafter certain permanent improvements were made on the property at a cost of $1,500, all of which was paid by the husband.

Petitioner's husband died in 1924. The real estate then had a market value of $40,000. The petitioner was executrix and the sole beneficiary of his estate.

Said real estate was included in the estate tax return filed by the petitioner, as executrix, at $35,200, this being 88 per cent. of the value at the time of death, which percentage represents the portion of cost paid by the decedent. A federal estate tax was paid based on the net estate as returned by the executrix.

The real estate was sold by petitioner on or about July 1, 1925, for $40,000. The selling expenses amounted to $2,055.80, which amount has been allowed by the respondent in determining the profit realized on the sale.

In 1925 petitioner paid and deducted in her return for that year interest charges amounting to $6,298.49, of which the sum of $2,846.52 had accrued prior to her husband's death, and was included in the liabilities of his estate. In that year she also paid, and claimed as a deduction in her return, the sum of $1,431.93 for local property taxes. Of this amount, $761.96 had accrued prior to her husband's death, and was included among the liabilities of his estate.

In his determination of the deficiency, respondent (a) used cost in 1915 as a basis for computing the amount of profit realized on the sale of the real estate and in his computation allowed $2,500 for improvements to the real estate; (b) disallowed $3,583.71 of the interest deduction on the ground that

such amount had accrued prior to the death of petitioner's husband; and (c) allowed the sum of $1,431.93 as a deduction for local property taxes.

Petitioner's contention is that in determining the deficiency the Commissioner went back to the time of the acquisition of the property and treated it, for income tax purposes, as though the husband had never had any rights therein at all, when the correct basis for determining the value of the property in question, for purposes of taxation, should have been the amount she contributed towards the purchase of the property in 1915 plus the value of her husband's interest in it at the time of his death.

The statutes and regulations involved are the following:

"Revenue Act of 1926, c. 27, 44 Stat. 9, 14, 23, 70, §§ 204 (a) (4, 5), 213 (a), 302 (e), 26 USCA §§ 935 (a) (4, 5), 954 (a), 1094 (e):

"Sec. 204. (a) The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that— * * *

"(4) If the property was acquired by gift or transfer in trust on or before December 31, 1920, the basis shall be the fair market value of such property at the time of such acquisition;

"(5) If the property was acquired by bequest, devise, or inheritance, the basis shall be the fair market value of such property at the time of such acquisition. The provisions of this paragraph shall apply to the acquisition of such property interests as are specified in subdivision (c) or (e) of section 402 of the Revenue Act of 1921, or in subdivision (c) or (f) of section 302 of the Revenue Act of 1924, or in subdivision (c) or (f) of section 302 of this Act; * * *

"Sec. 213. * * *

"(a) The term 'gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *

"Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated— * * *

"(e) To the extent of the interest therein held as joint tenants by the decedent and any other person, or as tenants by the entirety by the decedent and spouse * * *: Provided further, That where any property has been acquired by gift, bequest, devise, or inheritance, as a tenancy by the entirety by the decedent and spouse, then to the extent of one-half of the value thereof, or, where so acquired by the decedent and any other person as joint tenants and their interests are not otherwise specified or fixed by law, then to the extent of the value of a fractional part to be determined by dividing the value of the property by the number of joint tenants. * * *"

"Treasury Department Regulations 69:

"Art. 1591. Basis for determining gain or loss from sale.—The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, is, in general, the cost of such property. This general rule is, however, subject to the exceptions set forth in section 204 and articles 1592–1602. The basis for determining the gain or loss from the sale or other disposition of property acquired before March 1, 1913, is—

"(1) The cost of such property (or, in the case of such property as is described in paragraphs (1), (4), and (5) of section 204 (a), 26 USCA § 935 (a) (1, 4, 5), and articles 1592 and 1594, the basis therein provided), or

"(2) The fair market value of such property as of March 1, 1913, whichever is greater.

"What the fair market value of property was on March 1, 1913, is a question of fact to be established by competent evidence. In determining the fair market value of stock in a corporation, due regard shall be given to the fair market value of the corporate assets on the basic date. In the case of property traded in on public exchanges, actual sales at or about the basic date afford evidence of value, but in each case the nature and extent of the sales and the circumstances under which they were made must be considered. Thus, prices received at forced sales or prices received for small lots of property may be no real indication of the value of the property.

"Art. 1594. Property acquired by gift or transfer in trust on or before December 31, 1920, or by bequest, devise, or inheritance.—In computing the gain or loss from the sale or other disposition of property acquired by gift or by a transfer in trust on or before December 31, 1920, or by bequest, devise, or inheritance, the basis shall be the fair market price or value of such property at the time of acquisition. The term 'property acquired by bequest, devise, or inheritance' as used herein includes (except in case of a bona fide sale for an adequate and full consideration in money or money's worth)—

"(a) Such property interests as the taxpayer has received as the result of a transfer, or creation of a trust, in contemplation of or intended to take effect in possession or enjoyment at or after death; and

"(b) Such property interests as the taxpayer has received as the result of the exercise by a person of a general power of appointment (1) by will or (2) by deed executed in contemplation of or intended to take effect in possession or enjoyment at or after his death.

"In the case of property acquired by gift, bequest, devise, or inheritance, prior to March 1, 1913, the gain or loss from the sale or other disposition thereof shall be computed upon the basis provided in section 204 (b) and article 1591.

"In the case of property acquired by bequest, devise, or inheritance, its value as appraised for the purpose of the Federal estate tax or in the case of estates not subject to that tax, its value as appraised in the State court for the purpose of State inheritance taxes shall be deemed to be its fair market value when acquired."

A study of the statutes and regulations, above set out, shows that, in order to sustain the contention made on behalf of petitioner, it must be concluded that, on the death of her husband in 1924, she acquired some interest in the property in question by "bequest, devise, or inheritance." Section 204 (a) (5). It is claimed that United States v. Tyler, 33 F.(2d) 724, decided by this court, and Tyler v. United States, 281 U. S. 497, 50 S. Ct. 356, 358, 74 L. Ed. 991, 69 A. L. R. 758, sustain the position that "something" passed to petitioner on the death of her husband that was in the nature of an "inheritance," and that consequently, the value of the property, in computing petitioner's profit for income tax purposes, should be fixed as of the date of the husband's death.

Mr. Justice Sutherland said in Tyler v. United States, supra: "The decisions of the courts of Maryland and Pennsylvania follow the common law, and are in accord in respect of the character and incidents of tenancy by the entirety. In legal contemplation, the tenants constitute a unit; neither can dispose of any part of the estate without the consent of the other; and the whole continues in the survivor. In Maryland, such a tenancy may exist in personal property as well as in real estate. These decisions establish a state rule of property, by which, of course, this court is bound. Warburton v. White, 176 U. S. 484, 496, 20 S. Ct. 404, 44 L. Ed. 555."

In Cunningham v. Cunningham, 158 Md. 372, 148 A. 444, 446, 67 A. L. R. 1176, the court says: "That [the tenancy by the entireties] was an estate which vested in the plaintiff by virtue of the conveyance to her husband and herself prior to his death. The effect of the grant was to clothe each of them with the entire title, subject to termination as to either by his or her death in the lifetime of the other spouse. Marburg v. Cole, 49 Md. 411, 33 Am. Rep. 266; Jordan v. Reynolds, 105 Md. 288, 66 A. 37, 9 L. R. A. (N. S.) 1026, 121 Am. St. Rep. 578, 13 Ann. Cas. 51; Frey v. McGaw, 127 Md. 23, 95 A. 960, L. R. A. 1916D, 113; Ades v. Caplin, 132 Md. 66, 103 A. 94, L. R. A. 1918D, 276."

In discussing the statute that was involved in the case of Tyler v. United States, supra, Mr. Justice Sutherland also said: "Section 201 imposes the tax 'upon the transfer of the net estate'; and if that section stood alone, the inclusion of such property in the gross estate of the decedent probably could not be justified by the terms of the statute."

The death duty held properly imposed in that case was only sustained because Congress expressly used the words "tenants in (by) the entirety." In the statute here under consideration there is no such express use or enumeration of estates by the entirety, and it follows that, if they cannot be regarded as "inheritances," the property in question, under the Maryland law, must be regarded for income tax purposes as being acquired by the petitioner at the time she and her husband purchased it, and valued as of that date and not as of the date of her husband's death.

In the Tyler Case Mr. Justice Sutherland goes on to say:

"* * * The question here, then, is, not whether there has been, in the strict sense of that word, a 'transfer' of the property by the death of the decedent, or a receipt of it by right of succession, but whether the death has brought into being or ripened for the survivor, property rights of such character as to make appropriate the imposition of a tax upon that result (which Congress may call a transfer tax, a death duty or anything else it sees fit), to be measured, in whole or in part, by the value of such rights. * * *

"To include in the gross estate, for the purpose of measuring the tax, the value of property, no part of which originally belonged to one spouse, but which came to the tenancy, mediately or immediately, as a pure gift from the other, and which, as a consequence of the latter's death, was relieved from restrictions imposed by the law in respect of tenancy by the entirety so as to produce in the survivor the right of sole proprietorship, is obviously neither arbitrary nor capricious. The evident and legitimate aim of Congress was to prevent an avoidance, in whole or in part, of the estate tax by this method of disposition during the lifetime of the spouse who owned the property, or whose separate funds had been used to procure it; and the provision under review is an adjunct of the general scheme of taxation of which it is a part, entirely appropriate as a means to that end. Taft v. Bowers, 278 U. S. 470, 482, 49 S. Ct. 199, 73 L. Ed. 460, 64 A. L. R. 362."

Properly analyzed, the decision of the Supreme Court in the Tyler Case, in our opinion, supports the decision of the Board of Tax Appeals in the present case.

Congress, as is its right, has specifically designated the character of transfers to which the standard of value at the time of acquisition shall apply, and has omitted including estates by the entirety, while in the statute under consideration in the Tyler Case it (Congress) expressly included such estates.

There is no merit in the contention made that the imposition of the tax here would result in double taxation. The two taxes differ in kind and incidence, and, as was said by the Board in its decision, "fall on different persons; the estate tax on decedent's estate, and the income tax on the petitioner."

The legal fictions surrounding an estate by the entirety are unquestionably of value, and such estates once created should not be allowed to escape necessarily incident and proper burdens of taxation.

The decision of the Board of Tax Appeals is affirmed.