HEIRS OF ANTONIA ARMSTRONG WIDOW OF RUBERT ET AL., Petitioners, *v.* TAX COURT OF PUERTO RICO, Respondent. TREASURER OF PUERTO RICO, Intervener.

No. 286. Argued November 18, 1952.—Decided December 10, 1952.

*Cayetano Coll y Cuchí* and *Víctor A. Coll* for petitioners. *Víctor Gutiérrez Franqui, Attorney General,* and *José A. García Malpica, Assistant Attorney General,* for intervener, defendant in the main action. *Abelardo Ruiz Suria* as *amicus curiae.*

MR. JUSTICE MARRERO delivered the opinion of the Court.

Antonia Armstrong and her husband were the owners of several properties, of which, after her husband's death, she sold her undivided one-half share, and upon filing her income tax return for each one of the years in which the sales took place, she reported as gain the difference between the price obtained and the fair market value of the respective properties at the time of their allotment to her. The taxpayer having died thereafter, the Treasurer of Puerto Rico notified her heirs sundry deficiencies in connection with said sales [1] as, in his judgment, the gain to be informed should have been the difference between the price obtained for each property and their cost to the conjugal partnership at the time the properties were acquired. After complying with the necessary administrative steps, the heirs appealed to the former Tax Court of Puerto Rico where the case, on being called for trial, was submitted on the pleadings. After setting forth in its opinion the underlying facts in the case before it and stating therein that "the legal point actually involved would rest on whether the cost of the properties at the time they were originally acquired in 1916 should be taken as basis for estimating the capital gain" as did the Treasurer, or the cost to the taxpayer at the time of the liquidation of the community property and allotment of the properties to her, whatever the date thereof, the said Tax Court held that there was no need to decide the legal question involved and

---

[1] The sales took place in 1941, 1942, 1943 and 1947 and the deficiencies notified corresponded to said tax years.

that the dismissal of the complaint did lie as said complaint "stated the specific market value per cuerda of the properties sold, and it is on the basis of said specific value per cuerda that plaintiffs maintain they had obtained their alleged specific capital gain in each transaction" and that as in his answer the Treasurer "accepts that he took as a basis the cost of the properties at the time they were originally acquired, but expressly denies that the taxpayer had obtained gains in the specific amounts that she states," this involves, as a matter of fact, a negative which makes it imperative that plaintiff prove with clear and convincing evidence the value of the properties at the time of their allotment as community property, whether it be cost or market value, and that as in the absence of such evidence it should not interfere with the determination of the Treasurer, judgment should be entered dismissing the complaint. To review the judgment rendered we issued a writ of certiorari.

The petitioning heirs now allege merely that the lower court erred "in failing to decide the point in controversy as established in the complaint and admitted in the answer on the ground that there was no evidence in the record in support thereof." The error so assigned was obviously committed. In order to decide the question which the Tax Court had before it, it was unnecessary to offer evidence of the cost of the properties to the conjugal partnership or of the market value of the properties allotted undividedly to the taxpayer and to the heir of the late Luis Rubert at the time of the latter's death. That cost and that market value were known to the Treasurer as well as to plaintiffs. It was on the basis of that cost that the Treasurer notified the deficiencies, and it was on the basis of that market value that the predecessor in interest of the petitioning heirs reported in her return the gains obtained. In fact, the legal point to be decided was whether in cases of this nature the capital gain is to be determined taking as a basis the cost of the properties to the conjugal partnership or their market value at the death of the husband.

The question is new in this jurisdiction. Not so in others where, as here, the conjugal partnership exists, nor in others where said partnership does not exist but the spouses acquire real property by what in the Common Law and in certain states of the American Union is known as a tenancy by the entirety.[2]

Section 5 of the Income Tax Act of 1924 (Sess. Laws, p. 400, 408), states in the part pertinent hereto:

"(a) Except as hereinafter provided in this section, the gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the basis provided in subdivisions (a) or (b) of section 7, . . . ."

And § 7 of the same Act, in its pertinent part reads as follows:

"(a) *The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1953,[3] shall be the cost of such property,* . . .

".      .     .     .     .     .     .     .     .     .     .

"(5) If the property was acquired by bequest, devise or inheritance, the basis shall be the fair market value of such property at the time of such acquisition.   . . . ."   (Italics ours.)

Section 20 of Regulations No. 1 for the execution of the aforesaid Income Tax Act provides: ". . . In general, the gain from the sale or other disposition of property is the excess of the amount realized therefrom over the cost or other basis provided in Section 7 . . ."   And § 32 of said regulations provides: "The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, is, in general, the cost of such property."

The provisions above quoted seem to us clear and decisive. The Act, as well as the regulations, clearly provides that the

---

[2] For the definition and extent of the phrase "tenancy by the entirety" see II American Law of Property, p. 23, § 6.6, 1952 ed.

[3] The parties here admit that the properties involved were acquired after the year referred to.

basis for determining the gain shall be the cost of the immovable, except where the property was acquired by bequest, devise or inheritance. When in August 6, 1925 the Puerto Rican lawmaker enacted the referred to Income Tax Act, he had full knowledge that for many years there existed in our Island a Civil Code which clearly provides that all marriages in Puerto Rico shall be contracted under the system of conjugal partnership—except where prior to celebrating the marriage contract the spouses execute a marriage contract—and that pursuant to said system the earnings or profits indiscriminately obtained by either of the spouses during the marriage shall belong to the husband and wife, share and share alike, upon the dissolution of the marriage. See, among others, §§ 1295, 1301, 1307, 1312, 1315 and 1322 of the Civil Code, 1930 ed. With that knowledge of our substantive law, the lawmaker did provide, however, that the basis for determining the gain shall be the cost of the property with the exception already mentioned. It is well known that the surviving spouse receives his or her half share in the community property in his or her own right as a partner in the conjugal partnership and not as a legatee or heir of the deceased spouse. *Succession of Morales* v. *Kieckoefer*, 17 P.R.R. 889. The exception referred to in the Act does not apply, therefore, to said spouse and the basis for determining the gain was plainly the cost of the properties to the conjugal partnership. This being so, it is the opinion of this Court that although the Tax Court erred in not going into the merits of the question before it, the judgment, however, should be affirmed, as the procedure followed by the Treasurer conformed to law.

As already stated, the question now before us has already been decided by other courts. In *Boykin* v. *Comissioner*, 16 B.T.A. 477, the Boykin spouses acquired in 1909, as tenants by the entirety, a residence in Baltimore County for $10,000. The husband died in 1918 and the surviving wife sold the property in 1922. On deciding the case, the Board of Tax Appeals stated that the question before it was the basis to be

used in determining her gain. In the course of the opinion it stated that "it has heretofore been determined that where a husband or wife, holding property as tenants by the entirety, dies and the other survives, such property forms no part of the estate of the decedent and is not subject to estate tax. (Cases cited.) The same reasoning which leads to the conclusion reached in those cases would require that upon a sale by the surviving tenant by the entirety the basis for determining gain or loss should be the original cost."

In *Lang* v. *Commissioner*, 23 B.T.A. 854, Walter B. Lang and his wife purchased in 1915 a dwelling in Catonsville, Maryland, at a cost of $13,000, of which amount the husband contributed $11,440 and the wife $1,560. The title was taken by them as tenants by the entirety. The husband died in 1924 and the following year the widow sold the property for $40,000. The case came before the Board of Tax Appeals and it was there decided that the basis for determining the gain on such sale was the cost of the property at the time it was acquired by the taxpayer and her husband. On appeal thereto, the Circuit Court for the Fourth Circuit affirmed the judgment. *Lang* v. *Commissioner*, 61 F. 2d 280. The case went to the Supreme Court of the United States (289 U. S. 109, 77 L. ed. 1066) and in an opinion delivered by Mr. Justice Sutherland said Court upheld the Circuit Court stating as follows:

"An estate by the entirety is held by the husband and wife in single ownership, by a single title. They do not take by moities, but both and each take the whole estate, that is to say, the entirety. The tenancy results from the common law principle of marital unity; and is said to be *sui generis*. Upon the death of one of the tenants 'the survivor does not take as a new acquisition, but under the original limitation, his estate being simply freed from participation by the other; ...' 1 Washburn, Real Property, 6th ed., § 912. In the present case, therefore, when the husband died, the wife, in respect of this estate, did not succeed to anything. She simply continued, in virtue of the nature of the tenancy, to possess and own what she already had.

Giving the words of the statute their natural and ordinary meaning, as must be done, it is obvious that nothing passed to her by bequest, devise, or inheritance.

".    .    .    .    .    .    .    .    :

". . . The result is that the interest held by a joint tenant or tenants by the entirety is expressly included in determining the value of the gross estate for purposes of the estate tax, but not so included as a basis for determining gain or loss under § 204(a).[4]  The express inclusion of the subdivision in the former case and its omission in the latter persuasively suggests. that Congress did not intend to include estates by the entirety under the phrase 'by bequest, devise, or inheritance'.  If Congress did so intend, it is hard to understand why subdivision (e), of § 302 was not expressly adopted as were (c) and (f). . . ..

".    .    .    .    .    .    .    .

"If the legislation here under review results in imposing an unfair burden upon the taxpayer, the remedy is with Congress and not with the courts.   Unless there is a violation of the Constitution, Congress may select the subjects of taxation and tax them differently as it sees fit; and if it does so in plain words, as it has done here, the courts are not at liberty to modify the act by construction in order to avoid special hardship."[5]

In *Schiesser* v. *Commissioner*, 28 B.T.A. 640, where certain immovables located in Philadelphia, State of Pennsylvania, were involved, the Board of Tax Appeals reached the same conclusion.

The Treasury Department of the United States has also reached the same conclusion as to immovables located in the states of Texas and Louisiana where, as in Puerto Rico, the system of community property governs.   The *National City*

---

[4] Section 204 of the Federal Internal Revenue Act cited above is, in its pertinent part herein, identical with § 7 of our Income Tax Act.

[5] We could express ourselves in similar terms in this case.  If the tax to be paid by a surviving spouse on selling its share in the conjugal partnership's property is to be determined taking as basis therefor the *cost* of the property to the conjugal partnership, while the tax to be paid by heirs or legatees is to be determined taking into consideration the fair value of the property bequeathed or inherited at the time their predecessor in interest died, and if said determination is unjust to the surviving spouse, that is something which is out of our hands to correct, but rather in the hands of our Legislature.

*Bank* v. *De la Torre,* 54 P.R.R. 651, 653; II American Law of Property, p. 122, § 7.3, 1952 ed. In deciding a case from Texas, said Department stated that the basis for determining gain upon the sale or other disposition of community property by the widow on being allotted to her, as regards her half share therein, is the cost of the property to the conjugal partnership. Internal Revenue Bulletin, Cumulative Bulletin, 1946–2, p. 58. And in connection with properties located in Louisiana it said that "The mere fact that the entire community property is included in the deceased husband's gross estate under the provisions of section 811 (e) (2) of the Code for Federal estate tax purposes is not inconsistent with the conclusion that under section 113 (a) of the Code, *supra,* the basis of the widow's one-half share of the community property, for determining gain or loss, is cost (adjusted) to the community." Internal Revenue Bulletin, Cumulative Bulletin, 1947–2, p. 76. See, also, 4 Tax Law Review, pp. 3, 30; and Mertens, *Law of Federal Income Taxation,* § 21.69, 1951, Cumulative Pocket Supplement, p. 162.

The judgment appealed from will be affirmed.