[Civ. No. 8600.   Third Dist.   Nov. 18, 1955.]

MARY BRAZIL, Appellant, v. RAYMOND BRAZIL et al., Respondents.

Riggins, Rossi, King & Kongsgaard and Ralph Trower for Appellant.

Francis H. Frisch and L. G. Hitchcock for Respondents.

VAN DYKE, P. J.—This is an appeal from a judgment in favor of defendants in an action wherein plaintiff, the widow of Manuel Brazil, sought to establish and quiet her title in certain real property as against the claims of two children of Manuel by a prior marriage who claimed under his will.

Appellant and Manuel Brazil intermarried in 1921 and lived together as husband and wife until his death in 1952. The evidence showed that at the time of their marriage Manuel was possessed of about $3,000, a part of which at least was used by him to pay the expenses of the honeymoon trip of the couple to the Azores Islands. Appellant at the time of her marriage to Manuel was a widow with three minor children. She was the guardian of the children and of their estates and was in receipt of $40 per month therefrom for their support. She owned property of her own which the court found to have approximated in value the sum of $10,000. Throughout their marriage, as the court found, appellant reposed the greatest trust and confidence in Manuel and he handled all business matters and managed her separate property, as well as such separate property as he may have had, and the community interests of the parties. Soon after returning from their wedding trip, Manuel and appellant and her children moved onto the ranch property which is the subject of this litigation. He rented the property for about five years. In 1926 he purchased it for $8,000. He took title in his own name. The trial court found that the cash purchase price was paid from community funds, from the separate funds of appellant, and from the separate funds of Manuel, and further that the exact amount of the funds from each source was unknown. However, there was a great deal of credible evidence, both oral and documentary,

that at the very least $5,750 of the total purchase price was supplied by appellant from her separate funds, and likewise there was strong evidence that thereafter an additional $4,250 of her separate funds were used in improving the property. After the property was purchased Manuel built a large dairy barn thereon in which he conducted a substantial dairy business and he also built on the property a two-story nine-room dwelling house which was the home of the family up to the time of his death in 1952. Appellant testified that Manuel on a number of occasions told her the property belonged to her and she said she did not discover the title stood in his name alone until 1945. She said she turned over to him and he handled all the funds which came to her from her separate estate, including the monthly allowance for the support of her children. In 1945, at Manuel's request, appellant accompanied him to an attorney's office where she joined him in the execution of a deed which conveyed the property to the two of them as joint tenants. She testified that she was told and she understood that the purpose of this was to place the title in such condition that if either of the two died the survivor would take the whole without the expense of probate. The attorney who prepared the joint tenancy deed and saw to its execution testified that he explained the matter to her in just that way. There was no evidence that it was also explained to her or that she understood that it was within the power of either party thereafter to destroy the joint tenancy and cause the property to be vested in the two as common tenants. She testified that after the joint tenancy deed had been executed Manuel on several occasions told her the property belonged to her. The title to the property remained unchanged after the execution of the joint tenancy deed until in 1951, a few months before he died, when Manuel caused another attorney, who had represented him on occasions, to prepare a deed of his interest in the property from himself to a third party and a deed from the third party back to him as his separate property. Shortly after the recordation of these deeds he died. Under the terms of his will his two children by his prior marriage succeeded to his undivided one-half interest.

The trial court found that when the parties joined in the conveyance to themselves as joint tenants they thereby intended to and did create a true joint tenancy estate and, therefore, concluded that the two deeds last referred to effected a destruction of the joint tenancy status, and caused

the property to be vested in Manuel and appellant as tenants in common; and that, by virtue of Manuel's will, the defendants were the owners of his interest. Appellant attacks the findings and her argument runs as follows: That from the evidence as to the source of the funds from which the property was purchased the trial court was compelled to find that Manuel held the legal title to the property in trust for appellant; that it appears without conflict that the greater part of the purchase price was furnished from the separate property of appellant; that as to the balance Manuel was guilty of commingling such community funds as might have gone into the purchase price with the separate funds of appellant in his hands; that the burden was upon him to prove any claim he might have to any interest in the property and that, failing such proof, it was all held by him in trust for appellant; that in any event there was a *pro tanto* resulting trust; and that equity will follow trust property, no matter what forms of conveyance or muniments of title are executed. ■ However, we think the execution of the joint tenancy deed affords sufficient support for the trial court's findings that, by the execution thereof, the parties intended to and did create a joint tenancy title in the two with all the incidents thereof; and that this is true notwithstanding what the real interests of the parties may have been prior to the execution of that deed and however they may have been held. For example, if, after taking the title in himself, Manuel had executed and delivered to appellant an express declaration that he held the whole title or some part thereof in trust for her, nevertheless her joining in the execution of the joint tenancy deed would support the findings of the trial court. The execution of that deed was in itself an expression of an intention of the parties thereafter to hold the property in accordance with its terms. (*Siberell* v. *Siberell*, 214 Cal. 767, 773 [7 P.2d 1003].) The court impliedly found that no fraud was practiced upon her. There is nothing in the record which compels a finding to the contrary. ■ When she executed the joint tenancy deed, in the absence of fraud or misrepresentation she, in effect, consented in writing to a new status with respect to her interest and that of Manuel in the subject property. (*Schindler* v. *Schindler*, 126 Cal.App.2d 597 [272 P.2d 566].) It ought to be mentioned that, in addition to the evidence we have referred to, it appears from the record that Manuel and appellant had for years made use of joint tenancies in re-

spect of their property. He had made a number of loans wherein the notes ran in favor of both and the deeds of trust securing payment of the same recited that their beneficial interests were those of joint tenants. At least one bank account, which shortly before his death had amounted to nearly $10,000, had long been kept in joint tenancy and appellant had withdrawn the funds from that account while Manuel still lived. As the trial court observed, it was probable from the evidence before it that these two knew a good deal more about joint tenancies than the average person knows.

For the reasons given, the judgment appealed from is affirmed.

Peek, J., and Schottky, J., concurred.

A petition for a rehearing was denied December 9, 1955, and appellant's petition for a hearing by the Supreme Court was denied January 5, 1956.