Lucille BORDENAVE, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. No. 7344.

United States District Court
N. D. California, N. D.

April 2, 1957.

Jones, Lane, Weaver & Daley, Stockton, Cal., for plaintiff.

Lloyd H. Burke, U. S. Atty., and Lynn J. Gillard, Asst. U. S. Atty., San Francisco, Cal., for defendant.

HALBERT, District Judge.

Plaintiff filed this action under the provisions of Title 28, U.S.C.A. §§ 1340 and 1346, to recover income taxes which are alleged to have been erroneously and illegally collected by defendant. The case came on regularly for trial, the

Court sitting without a jury has heard all the evidence, both parties have submitted post-trial memoranda, and the case is now ready for decision.

The facts are relatively undisputed. By stipulation of the parties, the sole issue in the case is whether certain farm property (hereinafter referred to as the Farmington Ranch) owned by plaintiff and her deceased husband during their marriage was joint tenancy property or community property at the time of plaintiff's husband's death on April 2, 1948. In plaintiff's income tax returns for the years 1949 and 1950, the Farmington Ranch was given an adjusted basis on the theory that it had the status of community property at the time of the husband's death (§ 113(a) (5) of the Internal Revenue Code of 1939, as amended, 26 U.S.C.A. § 113(a) (5)). The value of a clover crop growing on the Farmington Ranch was taken into consideration in computing the new basis, and based on this new valuation, plaintiff deducted from her gross income in both 1949 and 1950 an amount representing a depreciation allowance on the clover crop. The commissioner thereafter disallowed the deductions on the ground that the Farmington Ranch was held in joint tenancy by plaintiff and her husband at the time of the husband's death, thus making the adjustment of basis by the surviving joint tenant improper, and asserted deficiencies against plaintiff for each of the two years, which plaintiff thereafter paid. By this action plaintiff seeks to recover the deficiency amounts so paid, contending that the Farmington Ranch was, in reality, the community property of her and her deceased husband at the time of his death.

The evidence shows that on November 14, 1944, the Farmington Ranch was purchased with community funds and title was taken in the name Pete Bordenave (plaintiff's husband) alone. On March 28, 1946, title to the Farmington Ranch was tranferred by Pete and Lucille Bordenave to Pete and Lucille Bordenave as *joint tenants*. The circumstances surrounding this transaction are not disclosed by the evidence. It appears only that plaintiff signed the deed at the request of her husband not realizing that any change in the nature of the tenure of the Farmington Ranch was wrought thereby. No conversation, discussion, agreement or understanding between Mr. and Mrs. Bordenave with respect to the Farmington Ranch was ever had either at the time the deed was signed on March 28, 1946, before or after. In fact, Mrs. Bordenave testified that during her entire married life all family business matters were handled exclusively by her husband, and that she never participated in any of the business affairs unless requested by her husband. Plaintiff further testified that she signed the joint tenancy deed on March 28, 1946, without reading it, without any explanation of it, and without any question about it, "because I knew they were the things that Pete wanted done" (Tr., p. 8, line 17). After Mr. Bordenave's death, the joint tenancy was terminated by virtue of a decree of the Superior Court of the State of California, in and for the County of San Joaquin. However, for both the State Inheritance Tax and the Federal Estate Tax, the Farmington Ranch was treated as community property.

The intention of Mr. Bordenave behind his decision to place the title to the Farmington Ranch in joint tenancy is not disclosed by any direct evidence in the record. There is, however, an inference that it was done for the purpose of insuring an even division of the income derived from the Ranch between plaintiff and himself as a tax-saving device.[1] It cannot be determined, however,

1. Generally speaking, prior to 1948 (when the split-income provisions were enacted into the Internal Revenue Code, [§ 51(b), 26 U.S.C.A. § 51(b)]), the practice in California was for each spouse to file a separate return each declaring one-half of the year's community income from post 1927 community property. By placing property in joint tenancy, however, an even division of the income arising from such property could also be accomplished without the attendant fear that some of the property might have a status other than community

with any degree of certainty whether Mr. Bordenave treated such income as community income or income from joint tenancy property in the tax returns he filed for the years 1946 and 1947.[2] Since there is no evidence of any inter-spousal communication regarding the Ranch, the Court does not find it possible to reconstruct Mr. Bordenave's frame of mind on the question of whether the Ranch was placed in joint tenancy for all purposes or merely for the sake ·of form with the understanding that it would, in substance, continue to be held as community property.

 The law is well established in California that a deed to real property denominating husband and wife as joint tenants creates a rebuttable presumption that the property is held by the spouses in joint tenancy rather than as community property.[3] The presumption may be overcome by evidence of the intention, understanding or agreement of the spouses to hold the property as community property rather than in the form specified in the deed (Gudélj v. Gudelj, 41 Cal.2d 202, 259 P.2d 656 and cases there cited). However, in general there must be mutuality between the husband and wife as to such an intention or understanding; it is not sufficient to overcome the presumption created by the form of deed that one spouse, only, had a contrary frame of mind (Gudelj v. Gudelj,

supra; Socol v. King, 36 Cal.2d 342, 223 P.2d 627; Huber v. Huber, 27 Cal.2d 784, 167 P.2d 708; cf. Watson v. Peyton, 10 Cal.2d 156, 73 P.2d 906; Perkins v. West, 122 Cal.App.2d 585, 265 P.2d 538; Schindler v. Schindler, 126 Cal. App.2d 597, 272 P.2d 566; Brazil v. Brazil, 137 Cal.App.2d 144, 289 P.2d 807; and Hurt v. Jones, 147 Cal.App.2d ——, 304 P.2d 786). It further appears to be the general rule, although relatively unarticulated, that, *in the absence of a. showing of mutuality,* a spouse who participates in the joint tenancy transaction cannot later vitiate the joint tenancy form by declaring that he (or she) actually intended that the property be held as community property or that he (or she) was devoid of any knowledge or understanding of the legal implications of the joint tenancy form at the time of participation or thereafter (Socol v. King, supra; Watson v. Peyton, supra; Edwards v. Dietrich, 118 Cal.App.2d 254, 257 P. 2d 750; Schindler v. Schindler, supra; Brazil v. Brazil, supra; but cf.: Wood v. Wood, 81 Cal.App.2d 729, 185 P.2d 53 [facts not clearly revealed in opinion]; Perdicalis v. Perdicalis, 92 Cal.App.2d 274, 206 P.2d 650 [facts not clear]; Turknette v. Turknette, 100 Cal.App.2d 271, 223 P.2d 495 [reaching an apparently contrary result on the equities arising out of a situation involving an innocent putative spouse and a wandering,.

property causing an adjustment of community income allocation for tax purposes.

2. An even division of income was made by the Bordenaves for the year 1946. However, the returns for 1947 reveal an uneven allocation; Mr. Bordenave declaring $18,860.79, and Mrs. Bordenave, $11,316.47. The reasons behind this allocation have not been made apparent to the Court, and, hence, the Court does feel that any specific inferences are warranted in view of the innumerable alternatives which could provide an explanation for the 1947 allocation.

3. Siberell v. Siberell, 214 Cal. 767, 7 P. 2d 1003; Tomaier v. Tomaier, 23 Cal.2d 754, 146 P.2d 905; Huber v. Huber, 27 Cal.2d 784, 167 P.2d 708; Socol v.

King, 36 Cal.2d 342, 223 P.2d 627; Gudelj v. Gudelj, 41 Cal.2d 202, 259 P.2d 656; Wood v. Wood, 81 Cal.App.2d 727, 185 P.2d 53; Perdicalis v. Perdicalis, 92 Cal.App.2d 274, 206 P.2d 650; Turknette v. Turknette, 100 Cal.App.2d 271, 223 P.2d 495; Palazuelos v. Palazuelos, 103 Cal.App.2d 826, 230 P.2d 431; Edwards v. Dietrich, 118 Cal.App.2d 254, 257 P.2d 750; Perkins v. West, 122 Cal.App.. 2d 585, 265 P.2d 538; Schindler v. Schindler, 126 Cal.App.2d 597, 272 P.2d 566; Stauffer v. Stauffer, 135 Cal.App.. 2d 515, 287 P.2d 518; Brazil v. Brazil, 137 Cal.App.2d 144, 289 P.2d 807; Tischhauser v. Tischhauser, 142 Cal. App.2d 252, 298 P.2d 551; Hurt v. Jones, 147 Cal.App.2d ——, 304 P.2d 786; and Kiplinger v. Kiplinger, 148 Cal.App.. 2d ——, 307 P.2d 677.

philandering quasi-husband]; and Palazuelos v. Palazuelos, 103 Cal.App.2d 826, 230 P.2d 431 [facts not clear]). The degree of participation by the complaining spouse required to bring the aforementioned rule into operation may vary from actively planning and dominating the joint tenancy transaction (Watson v. Peyton, supra; Edwards v. Dietrich, supra) to the mere act of signing the deed in acquiescence to the wishes of the other spouse (Schindler v. Schindler, supra). Where, however, the complaining spouse does not consent to or participate in the joint tenancy transaction, his or her individual intention that the property be held as community property may, in the proper case, be sufficient to overcome the presumption created by the joint tenancy form (Tischhauser v. Tischhauser, 142 Cal.App.2d 252, 298 P.2d 551; and cf.: Schindler v. Schindler, supra). Clearly, the fact that the joint tenancy property was purchased with community funds is not sufficient, by itself, to overcome the joint tenancy presumption (see: Gudelj v. Gudelj, supra, and cases there cited).

■ In the case at bar, plaintiff was undoubtedly genuinely unaware of the nature of the transaction placing the Farmington Ranch in joint tenancy, and signed the deed only because her husband had requested her to. There is nowhere in the record any evidence of a communicated *mutual* understanding between plaintiff and her husband at any time regarding the nature of their interest in the Farmington Ranch. Mr. Bordenave's death has deprived the Court of even a mere scintilla of evidence bearing on his intentions concerning the Ranch. The only probative evidence the Court can use as a guide, then, is the rebuttable presumption created by the form of deed. Hence, in view of the record, the Court is constrained to find that the quantum of evidence required by the law of California to overcome the presumption arising from the face of the deed has not been satisfied, and accordingly, the property known as the Farmington Ranch must be held to have been joint tenancy property at the time of Mr. Bordenave's death.

It is, therefore, ordered that judgment be entered in this action in favor of the defendant and against the plaintiff;

And it is further ordered that the defendant prepare findings of fact and conclusions of law, a form of judgment, and any other required documents, and lodge them with the Clerk of this Court pursuant to the applicable law and the rules of this Court.