VINNIE A. MURPHY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3957–62. Filed February 6, 1964.

*Richard A. Wilson*, for the petitioner.
*James Booher*, for the respondent.

OPINION

ARUNDELL, *Judge:* Respondent determined deficiencies in income tax for the calendar years 1957 and 1958 in the amounts of $7,488.80 and $24,433.01, respectively. Petitioner alleges that she has overpaid her tax for both years.

All of the issues have been settled by stipulation except one. The one remaining issue is whether section 1014(b)(6) of the 1954 Code entitles petitioner to a stepped-up basis for her one-half undivided interest in three parcels of improved real property where, at the time of her husband's death in 1948, the spouses held these three properties under California law as tenants in common.

The facts were stipulated and are so found.

Petitioner filed her 1957 and 1958 Federal income tax returns with the district director of internal revenue at San Francisco, Calif.

Petitioner is the widow of Henry C. Murphy, hereinafter sometimes referred to as Henry. During their marriage petitioner and Henry were domiciled in California. While domiciled in California, their community funds were used for the purchase of the following three pieces of improved real estate:

| Identity of property | Year of purchase |
|---|---|
| Union Drive-In (hereinafter referred to as Union), an improved piece of real property, located at Main and John Streets, Salinas, Calif. | 1936 |
| Webb Service Station and Hotel (hereinafter referred to as Webb), an improved piece of real property, located at Main Street and Avenue A, Salinas, Calif. | 1932 |
| Slate Springs (hereinafter referred to as Slate), an improved piece of real property, located in Monterey County, Calif. | 1936 |

On February 9, 1942, petitioner and Henry signed a deed granting the three properties (Union, Webb, and Slate), to themselves as joint tenants. On February 15, 1948, petitioner and Henry granted the said properties then held as joint tenants to one Florence E. Ash, a single person. On the following day, February 16, 1948, Florence, by grant deed, granted to petitioner and Henry the said three properties as tenants in common.

Henry died on December 2, 1948. Before February 9, 1942, petitioner and Henry held Union, Webb, and Slate as their community property under the laws of the State of California. Between Feb-

ruary 9, 1942, and February 15, 1948, petitioner and Henry held Union, Webb, and Slate in joint tenancy, each owning a one-half interest in each piece of real property as their separate property under the laws of the State of California. After February 15, 1948, and on December 2, 1948, petitioner and Henry owned Union, Webb, and Slate as tenants in common, each owning a one-half undivided interest in each piece of real property as their separate property under the laws of the State of California.

Henry devised his interest in Union, Webb, and Slate to his surviving spouse, petitioner herein.

On or about March 31, 1950, a Federal estate tax return was filed for the estate of Henry C. Murphy. Included in the gross estate was Henry's one-half undivided interest in Union, Webb, and Slate at a total value of $161,250. Other properties included brought the gross estate up to a total of $184,757.12. Deductions, exclusive of any marital deduction, amounted to $29,431.63. This left an adjusted gross estate of $155,325.49, one-half of which, or $77,662.75, was claimed as a marital deduction, thus making the total deductions $107,094.38 ($29,431.63 plus $77,662.75). The net estate was then computed as follows:

| | | |
|---|---:|---:|
| Total gross estate | | $184,757.12 |
| Total deductions | $107,094.38 | |
| Specific exemption | 100,000.00 | |
| Total deductions | | 207,094.38 |
| Net estate | | None |

During the audit of the estate tax return, the examining estate tax agent raised the following issue with respect to the marital deduction claimed therein in connection with Henry's interest in Union, Webb, and Slate:

Did the decedent and his surviving spouse effect a "conversion" of community property by the transfer of February 9, 1942, so that the property included in decedent's gross estate is community property for purposes of determining the adjusted gross estate, as defined in section 81.47d(b)(ii) and subject to the special rule in case involving community property as set forth in section 81.47d(b)(2) of Estate Tax Regulations 105?

The estate tax agent took the position that the transfer of property on February 9, 1942, amounted to a "conversion" within the meaning of sections 81.47d(b)(ii) and 81.47d(b)(2) of Regs. 105, as amended by T.D. 5699 (1949–1 C.B. 181, 208).

The executrix of Henry's estate took the position that no "conversion" took place during 1942. However, by the transfer of February 1948 Henry and his spouse no longer viewed such property as community property and considered that they, by such transfer,

transmuted said community property to a true tenancy in common.

The executrix of the estate agreed to the position taken by the examining estate tax agent. Accordingly, the claimed marital deduction was reduced from $77,662.75 to $941. The executrix paid the deficiency in estate tax resulting from this adjustment.

It may be noted at the outset that petitioner has briefed the case on the basis of applying the 1939 Code, whereas the respondent cites the 1954 Code. Since the taxable years involved are 1957 and 1958, we agree with respondent that the 1954 Code is the one to apply. See sec. 7851, I.R.C. 1954. The point is not too important as the sections of the 1939 Code relied upon by petitioner are substantially the same as the 1954 Code. We shall refer only to the 1954 Code.

The sole remaining issue is the proper "basis" to petitioner of the three properties (Union, Webb, and Slate) for computing depreciation and determining the gain or loss from the sale or other disposition of the property. Petitioner contends that the basis of her one-half undivided interest and of the one-half undivided interest acquired from her husband is the fair market value of the property at the date of the decedent's death. The respondent agrees as to the one-half undivided interest acquired from her husband but contends that petitioner's one-half undivided interest owned by her as a tenant in common at the date of her husband's death is the "cost of such property" and not the fair market value thereof at the date of the decedent's death. We agree with respondent.

Section 167 (f) of the 1954 Code provides:

(f) BASIS FOR DEPRECIATION.—The basis on which exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the adjusted basis provided in section 1011 for the purpose of determining the gain on the sale or other disposition of such property.

Section 1011, I.R.C. 1954, provides:

SEC. 1011. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis (determined under section 1012 or other applicable sections * * *

Section 1012, I.R.C. 1954, provides:

SEC. 1012. BASIS OF PROPERTY—COST.

The basis of property shall be the cost of such property, except * * *

The material provisions of section 1014 of the 1954 Code (successor to sec. 113 (a) (5) of the 1939 Code) are as follows:

SEC. 1014. BASIS OF PROPERTY ACQUIRED FROM A DECEDENT.

(a) IN GENERAL.—Except as otherwise provided in this section, the basis of property in the hands of a person acquiring the property from a decedent or to whom the property passed from a decedent shall * * * be the fair market value of the property at the date of the decedent's death * * *

(b) Property Acquired From the Decedent.—For purposes of subsection (a), the following property shall be considered to have been acquired from or to have passed from the decedent:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(6) In the case of decedents dying after December 31, 1947, property which represents the surviving spouse's one-half share of community property held by the decedent and the surviving spouse under the community property laws of any State \* \* \*;

This brings us to the very crux of petitioner's contention. Petitioner contends that the words "community property held" as used in section 1014(b) (6), *supra*, embrace her one-half undivided interest as well as her husband's one-half undivided interest in the three properties which were held by them as tenants in common at the date of the husband's death. Her reason for this contention is that in determining the allowance for the marital deduction under section 2056(c) (2) (C)[1] of the 1954 Code, that section provided that, except for a reason not here existing, community property that is converted into separate property shall nevertheless "be considered as 'held as such community property.' "

Petitioner argues from this that the same rule as used for estate tax purposes should also apply for income tax purposes and that since the three properties here in question had been converted from community property into property held as tenants in common, the property should nevertheless still be considered as "community property held" as those words are used in section 1014(b) (6), *supra*.

There are several reasons why the same rule should not apply.

First, there is no section in the income tax provisions comparable with section 2056(c) (2) (C) of the estate tax provisions.

Second, on January 3, 1956, Congressman James B. Utt of California introduced a bill[2] which would have provided that the words "community property held" as used in section 1014(b)(6), *supra*, be extended to include separate property that had previously been converted from community property to separate property, but this bill died in committee. See Robinson, "The Basis of a Surviving Spouse's Interest in Transmuted Community Property: A Proposal To Amend

---

[1] SEC. 2056. BEQUESTS, ETC., TO SURVIVING SPOUSE.

(C) Community property—conversion into separate property.—

(1) After December 31, 1941.—If after December 31, 1941, property held as such community property (unless considered by reason of subparagraph (B) of this paragraph as not so held) was by the decedent and the surviving spouse converted, by one transaction or a series of transactions, into separate property of the decedent and his spouse (including any form of coownership by them), the separate property so acquired by the decedent and any property acquired at any time by the decedent in exchange therefor (by one exchange or a series of exchanges) shall, for the purposes of clauses (i), (ii), and (iii) of subparagraph (B), be considered as "held as such community property."

[2] H.R. 7980, 84th Cong., 2d Sess. (1956).

Section 1014(b) (6) of the Internal Revenue Code of 1954," 32 So. Calif. L. Rev. 244-262.

Third, to hold as petitioner contends would be contrary to our holding in *Laura Massaglia*, 33 T.C. 379, affd. 286 F. 2d 258 (C.A. 10, 1961). In that case the taxpayer and her deceased husband had moved in 1916 from Colorado, a common-law State, to New Mexico, a community property State, and had orally agreed that each should receive one-half of the profits of their business and that each would hold an equal one-half interest as tenants in common with the other in all properties purchased with the profits of the business. In 1943 the taxpayer and her husband reduced their oral agreement to written recordable form. In 1938 and again in 1949 the Supreme Court of New Mexico held that husbands and wives could not transmute by agreement *inter sese* the character of community property, but in 1952 the Supreme Court of New Mexico overruled its earlier cases and held that husband and wife could transmute the character of community property by agreement *inter sese*. The taxpayer's husband died in 1951. We held that for the purpose of determining depreciation and long-term gain the taxpayer held her interests in properties acquired by her and her husband as tenants in common with her husband, *not as community property*, and did not acquire a stepped-up basis for her share of the properties upon the death of her husband under section 113(a) (5) of the 1939 Code, the predecessor to section 1014(b) (6), *supra*.

Fourth, the fact that the three properties here involved are under section 2056(c) (2), *supra*, considered as "held as such community property" for the purposes of clauses (i), (ii), and (iii) of subparagraph (B) of section 2056(c) (2) does not mean that the three properties should also be considered as "community property held" as used in section 1014(b) (6), *supra*. This is so by reason of the fact that "The estate tax and the income tax are different in kind and wholly disparate in their incidence." *Robert J. Kleberg et al., Executors*, 31 B.T.A. 95. See also *Ernest M. Bull, Executor*, 7 B.T.A. 993, 1000-1001; *George D. Widener*, 8 B.T.A. 651, 660, affd. 33 F. 2d 833 (C.A. 3); *Fannie E. Lang*, 23 B.T.A. 854, 856-857, affd. 61 F. 2d 280 (C.A. 4, 1932), affd. 289 U.S. 109; and *Helen G. Carpenter*, 27 B.T.A. 282, 289-290.

We hold, therefore, that section 1014(b) (6), *supra*, does not entitle petitioner to a new basis for her prior one-half undivided interest in Union, Webb, and Slate because at the time of decedent's death the spouses held this property under California law as tenants in common and separate property rather than as community property. *Laura Massaglia, supra;* cf. *Bordenave* v. *United States*, 150 F. Supp. 820 (N.D. Cal.)

*Decision will be entered under Rule 50.*