ESTATE OF STEPHEN R. EHRET, DECEASED, GRACE E. EHRET, and GRANT R. EHRET, CO-EXECUTORS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Estate of Ehret v. Commissioner
Docket No. 353-75.
United States Tax Court
T.C. Memo 1976-315; 1976 Tax Ct. Memo LEXIS 86; 35 T.C.M. (CCH) 1432; T.C.M. (RIA) 760315; October 7, 1976, Filed Sam S. Pessin, for the petitioners. Robert Edler and James E. Cannon, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined a deficiency in petitioner's estate tax in the amount of $6,748.37. Other issues having been disposed of by agreement of the parties, the two issues remaining for decision are: (1) Whether decedent's widow contributed more than the amount respondent determined of the cost *87 of certain property held jointly with decedent at the time of his death; and (2) Whether the estate is entitled to a deduction for an $8,000 note payable by decedent Stephen R. Ehret to Ehret Plumbing & Heating Company. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Stephen R. Ehret ("decedent") was a resident of Belleville, Illinois, when he died testate on December 8, 1970. Grace E. Ehret ("Mrs. Ehret"), decedent's widow, and Grant R. Ehret ("Grant"), decedent's only child, were appointed co-executors of the estate. At the time of the filing of the petition in this case, both executors resided in Belleville, Illinois. Decedent worked as a journeyman plumber in his family's plumbing and heating business from sometime prior to 1929 until 1952. During the initial part of this period, the business was owned by decedent's father, Stephen R. Ehret, Sr. Following the elder Mr. Ehret's death, decedent's brother, Elmer, assumed control of the business. In 1952, after Elmer's death, decedent, Elmer's widow and Elmer's son formed a partnership to operate the business. In 1957 the business was incorporated as Ehret Heating and Plumbing Company, Inc. *88 , [1] with decedent serving as its president. Decedent and Mrs. Ehret were married in 1929. Prior to their marriage, they had reached an oral understanding, whereby they would pool their efforts to make their marriage successful. During the marriage Mrs. Ehret performed all the homemaking and child rearing duties. Since 1954 she has also worked in the family plumbing business. Her duties required her to answer the telephone, receive the mail, pay bills, and on occasion show customers plumbing fixture catalogues. Initially the business was located in a building right behind decedent's home, and during this period there was no paid office staff. Thereafter, presumably around 1962, the business was moved to a building across the street and office help was hired. Prior to 1962 Mrs. Ehret was not paid for the duties she performed; however, since 1962 she has worked as a salaried employee. Since 1965 Mrs. Ehret has also performed cleaning and maintenance work without pay for E & J Laundries, Inc., a company in which decedent was *89 a 1/3 shareholder. Her sole source of personal income during the marriage was the salary she received from the family plumbing business; she received no gifts or inheritances of substantial amounts. During their marriage decedent and Mrs. Ehret acquired certain property which they held in joint tenancy with right of survivorship. In 1932 they acquired a partial interest in a certain Clinton Valley Country Club House property. In 1946 they bought their home at 318 Mascoutah Avenue in Belleville, Illinois. Several years following the purchase of their home, they remodeled the structure. Decedent provided the materials and performed most of the labor, and Mrs. Ehret assisted him to the degree she was able. Decedent and Mrs. Ehret also held joint interests with right of survivorship in various savings and bank accounts, various shares of stock, an automobile and a mobile home park. In connection with the mobile home park, decedent had personally borrowed $25,000 on September 8, 1970, to make improvements to the property. This debt was still outstanding at decedent's death. In addition, decedent borrowed $8,000 from Ehret Heating and Plumbing Company on November 10, 1970. The *90 $8,000 was also expended on the mobile home park, and this debt too was unpaid at decedent's death. On January 20 and 27 and February 3, 1971, following decedent's death and the issuance of letters testamentary, decedent's executors published a public notice in a local newspaper notifying all persons to file any claims they may have against the estate of the decedent within seven months of the issuance of the letters testamentary. No claim was filed with respect to the $8,000 debt to Ehret Heating and Plumbing Company. On March 15, 1976, Mrs. Ehret, using her personal check, paid Ehret Heating and Plumbing Company the principal amount of the note plus accrued interest. On the Federal estate tax return, the executors included in the gross estate only 50 percent of the value of the jointly-owned property. They also claimed the $8,000 debt of Ehret Heating and Plumbing Company as a debt of the decedent. In his deficiency notice respondent determined that 100 percent of the value of decedent's residence and country club house property and 80 percent [2] of the value of the other jointly-owned property was includible in decedent's gross estate, and that the claimed deduction for *91 the $8,000 debt was not deductible from the gross estate on the grounds that the debt was not an enforceable claim against the estate. OPINION The first issue is what portion of the property jointly-owned by decedent and Mrs. Ehret at his death is includible in his gross estate. Under section 2040[3] the entire value of jointly-owned property is included in the gross estate of the first joint tenant to die, "except such part thereof as may be shown to have originally belonged to such other person [Mrs. Ehret] and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth * * *." Petitioner asserts that 50 percent of the value of the jointly-held property *92 is excludible from decedent's gross estate by reason of Mrs. Ehret's contributions of money and services toward the acquisition of such property. Respondent contends that the unpaid services rendered by Mrs. Ehret did not constitute adequate and full consideration in money or money's worth, and further that there has not been any proof that Mrs. Ehret made any contributions toward the acquisition of the jointly-owned property. We agree with respondent. Generally only contributions by the surviving tenant in money or money's worth will be taken into account in computing the part of the jointly-owned property not includible in the decedent's gross estate, section 20.2040-1(a)(2), Estate Tax Regs., and domestic services performed by a wife do not constitute such consideration. Estate of Harold Loveland,13 T.C. 5, 7 (1949); Bushman v. United States,8 F. Supp. 694, 698 (Ct. Cl. 1934), cert. denied 295 U.S. 756 (1935). Petitioner does not claim that Mrs. Ehret's homemaking and child rearing services constitute consideration, but limits *93 its claim to unpaid services rendered by Mrs. Ehret to decedent's business enterprises. Where a surviving spouse furnishes non-domestic services in a family business setting and a partnership agreement or agreement to share profits is shown, then the survivor may be deemed to have provided consideration in money or money's worth for property subsequently acquired in joint tenancy with funds obtained from the family business. Berkowitz v. Commissioner,108 F. 2d 319 (3rd Cir. 1939). However, Mrs. Ehret's situation is very different from Mrs. Berkowitz's. In the latter, husband and wife each made a small initial capital contribution to start a retail grocery business, for the next 43 years both devoted themselves full time to the conduct and development of the store, and profits from the business were put into jointly-owned property and bank accounts. In the case in issue here, Mrs. Ehret devoted most of her time during marriage to homemaking and child rearing, and only after the child rearing was completed did she perform any services in her husband's business (which *94 was a going concern established by her in-laws long before her marriage). Her unpaid services appear to have been minimal and part time. Petitioner, with whom the burden of proof lies, has failed to establish the value of those services. Mrs. Ehret has never paid any income tax (nor has anyone else) with respect to the value of those services. Petitioner next argues that respondent's method of computing the amount to be included in decedent's gross estate under section 2040 is incorrect in that it does not properly reflect Mrs. Ehret's monetary contributions. We disagree. Two of the properties owned jointly by the decedent and Mrs. Ehret were acquired prior to 1962, [4] at a time when Mrs. Ehret had no personal income or other personal funds. In view of these facts we are of the opinion the respondent properly included 100 percent of the value of these properties in decedent's gross estate. Respondent concedes that the other 11 properties owned jointly by decedent and Mrs. Ehret were acquired after 1962. He included only 80 percent of the value *95 of these properties in decedent's gross estate. Petitioner asserts that respondent's method of computing Mrs. Ehret's 20 percent contribution was incorrect in that it took into account the gross salary and other income of decedent and Mrs. Ehret rather than their net salary and other income. Petitioner argues that only the net amounts (after social security tax and income tax withholding) would be available for the acquisition of the joint property and as a consequence respondent erred in his computations. Under petitioner's theory approximately 76 percent of the value of the 11 properties should have been included in decedent's gross estate. We conclude that respondent was generous to exclude 20 percent of the value of these 11 jointly-owned properties from decedent's gross estate. Petitioner has failed to prove that any of the funds used to acquire these properties were furnished by Mrs. Ehret. For example, it is apparent from the evidence that in addition to his earnings decedent contributed $33,000 obtained by means of personal loans toward the acquisition of the mobile home park. We hold for respondent on this issue. The final issue is whether the petitioner is entitled *96 to a deduction under section 2053[5] for the $8,000 debt of decedent to Ehret Heating and Plumbing Company. Respondent asserts that, since no claim was filed in the Illinois probate proceeding, no deduction is allowable under section 2053. Petitioner argues that the estate is entitled to a deduction as the debt was valid and bona fide at the date of decedent's death and the debt was in fact paid. We agree with respondent. We have held under Florida law that where no claims were filed with respect to certain debts of decedent within the statutory period and the claims have not and will not be paid by the estate, such claims are not deductible under section 2053(a)(3). Estate of Frank G. Hagmann,60 T.C. 465, 469 (1973), *97 affd. percuriam492 F. 2d 796 (5th Cir. 1974). Here under the applicable Illinois law claims not filed in the probate proceeding within seven months of the issuance of letters testamentary are barred as to the estate assets which have been inventoried during that seven month period. [6]
Here the evidence shows that no claim has yet been filed with the estate for payment of the $8,000 debt of decedent, and that Mrs. Ehret personally paid the debt plus interest to Ehret Heating and Plumbing Company shortly before the trial of this case. The probate was still open at the time of trial. For the *98 first time in its brief, petitioner claimed that no inventory has yet been filed in the estate and that there are assets against which a claim could be made. Unfortunately for petitioner, there is no evidence in this case on which it may base this new contention. Petitioner has not introduced any evidence which would show whether or not an inventory was filed. In the current posture of this case, petitioner has failed to carry its burden of proof that the $8,000 debt of the estate is "allowable by the laws of the jurisdiction * * * under which the estate is being administered." Section 2053(a)(3). Under the circumstances, we hold for respondent on this issue too. Decision will be entered for the respondent. Footnotes
1. The record does not disclose who owned the stock of this company, except that decedent owned 185 shares worth $100,000 at the time of his death.↩
2. Respondent concluded that Mrs. Ehret contributed 20 percent of the value of this jointly-owned property on the basis that her salary equalled 20 percent of decedent's and her combined gross income for the years 1962 through 1970.↩
3. All statutory references are to the Internal Revenue Code of 1954, as in effect during the year in issue.↩
4. The Clinton Valley Country Club House property was acquired in 1932 and the decedent's residence was acquired in 1946.↩
5. Section 2053 provides in pertinent part: (a) General Rule.--* * * [The] value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts-- * * *
(3) for claims against the estate * * * as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered.↩
6. Ill. Rev. Stat., ch. 3, section 204 (1971). This statute was amended in 1972 and presently requires that claims be filed within six months of issuance of letters testamentary. A claim not filed within the prescribed time is not absolutely barred, but may still be brought against assets not actually inventoried or accounted for in the seven month period. Messenger v. Rutherford,80 Ill. App. 2d 25, 225 N.E. 2d 94, 97↩ (1st Dist. Ill. App. 1967).