ESTATE OF BERNICE E. ANDERSON, DECEASED, THOMAS A. ANDERSON, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Anderson v. Commissioner
Docket No. 17593-87
United States Tax Court
T.C. Memo 1989-643; 1989 Tax Ct. Memo LEXIS 644; 58 T.C.M. (CCH) 840; T.C.M. (RIA) 89643; December 7, 1989
*644 Theodore J. England and Stanley E. Cohen, for the petitioner. Christopher J. Croudace, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined a deficiency of $ 320,978.60 in petitioner's Federal estate tax. Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect as of the date of death, and all Rule references *645 are to the Tax Court Rules of Practice and Procedure. The issues for decision are (1) whether decedent held certain property in joint tenancy or as a contingent remainderman; (2) whether decedent's interests in the property were conveyed for a full and adequate consideration; (3) whether decedent's interests in the property are includable in her gross estate; and (4) the fair market value of the real property at the date of decedent's death. FINDINGS OF FACT Some of the facts have been stipulated, and the facts set forth in the stipulation are incorporated in our findings by this reference. Bernice E. Anderson (decedent), also known as Bernice E. Nordquist, was born on September 13, 1900, and died on July 2, 1983, in Ventura County, California. Thomas A. Anderson (Anderson), decedent's only child, was appointed executor of decedent's estate. Employment Background
Decedent received a real estate broker's license around 1950. Until approximately 1958, when she retired from work completely, she was engaged in the real estate brokerage business. Anderson received a real estate broker's license in 1947 and was consistently employed in the real estate brokerage business *646 from 1955 in the counties of Ventura and Los Angeles. At the time of trial in 1989, Anderson was employed as a real estate broker with Brown Realty in Thousand Oaks, California. During the course of his 30-year employment in the real estate profession, Anderson specialized in real estate transactions involving the sale of unimproved properties to residential, commercial, and industrial developers. The Ventura Boulevard Property
Decedent acquired her interest in certain commercial real property located at 19315 Ventura Boulevard (Ventura Boulevard Property), Tarzana, California, in 1955 and 1956 through a series of conveyances. The Ventura Boulevard Property consisted of four contiguous lots, three of which were acquired by decedent and her former husband, John Nordquist (Nordquist), by grant deed dated August 20, 1956. The remaining lot was acquired by decedent and Nordquist by grant deed dated September 28, 1955. Decedent and Nordquist paid $ 37,000 to acquire the Ventura Boulevard Property in 1955. Decedent and Nordquist dissolved their marriage sometime in 1958. On October 6, 1958, Nordquist quitclaimed his interest in the Ventura Boulevard Property to decedent.
*647 On several occasions, beginning in the early 1960's, decedent initiated conversations with her son concerning the nature of a prospective transfer to him of an interest in the Ventura Boulevard Property. The substance of the discussions revealed a desire on the part of decedent to transfer an interest in the Ventura Boulevard Property to Anderson under the following conditions: 1. Decedent, during her lifetime, would receive all of the income from the property; 2. Anderson was to perform all of the management activities associated with the property after the transfer; 3. If decedent predeceased Anderson, Anderson would be the sole owner of the property; and 4. If Anderson predeceased decedent, decedent would be the sole owner of the property. On January 12, 1966, decedent executed a grant deed to the Ventura Boulevard Property, conveying undivided one-half interests to herself and Anderson as joint tenants. Anderson was not involved in the preparation of the deed, and he paid no consideration in the form of money or property for the acquisition of his joint tenancy interest in the Ventura Boulevard Property. Subsequent to the conveyance, however, Anderson complied *648 with the above-listed conditions by performing the management services for the Ventura Boulevard Property from the date of conveyance until the date of decedent's death. Anderson performed the management services pursuant to the oral agreement with decedent, and neither Anderson nor decedent felt any need to memorialize their agreement with a writing due to their familial relationship. At the time of the transfer of the Ventura Boulevard Property interest, Anderson was not aware of what services he would perform for decedent or their potential value, except to the extent that he considered the value of his services to be equal to the one-half interest in the Ventura Boulevard Property. After acquiring his interest in the Ventura Boulevard Property, Anderson was confronted with resolving the delinquent rent problems of the tenant, Yeakel Car Company (Yeakel). Anderson immediately asked Yeakel to vacate the premises. Yeakel thereafter negotiated a new oral lease of a portion (Small Lot) of the four lots that comprise the Ventura Boulevard Property and vacated the remaining land (Large Lot). Yeakel continued to occupy the Small Lot until sometime in 1968 and then vacated the Ventura *649 Boulevard Property altogether. The Small Lot was thereafter leased to various tenants under oral month-to-month leases. From 1971 to 1980, Anderson and decedent entered into written leases on various terms with five different tenants. On May 6, 1966, Anderson and decedent entered into a lease of the Large Lot portion of the Ventura Boulevard Property with the American Oil Company (American Oil) for a term beginning September 1, 1966, and ending February 1, 1977. This lease gave the lessee two successive options to renew for 5-year terms, potentially extending the lease term to 1987. American Oil was to build and operate a gas station on the leased portion of the Ventura Boulevard Property. After decedent's death, Anderson made no effort to sell the Ventura Boulevard Property. In May 1984, however, Anderson received an unsolicited offer of $ 950,000 cash for the Ventura Boulevard Property from a broker for the persons who would be the ultimate purchasers. This was the first offer Anderson received for the Ventura Boulevard Property after decedent's death. He was surprised that an offer was being made, because he believed that the property could not be sold while subject to the *650 American Oil lease. Anderson signed escrow instructions on May 25, 1984, concerning the proposed sale of the property to Eshagh Masachi, Mojgan Veiseh, and Jack Y. Tabaroki for the purchase price of $ 950,000. The terms of the sale provided for payment of the purchase price in cash to Anderson at the close of escrow on November 15, 1984. The prospective purchasers could not secure adequate financing for the purchase, and, on June 14, 1984, the escrow instructions were modified to increase the purchase price to $ 1,000,000 and to provide for the seller to finance $ 725,000 and receive a note and first deed of trust in exchange. Escrow on the sales transaction, as modified, closed on November 15, 1984. The purchasers of the property secured the early termination of the American Oil lease by paying to American Oil's assignee, Thrifty Oil Company, the sum of $ 85,000 in two installments on February 6, 1985, and April 1, 1985. The purchasers also paid the James R. Wilson Company the sum of $ 9,687.83 for the removal of certain fuel tanks and the existing buildings on the Ventura Boulevard Property. The purchasers thereafter developed the Ventura Boulevard Property as a commercial *651 retail and office complex. The Los Angeles County Assessor's assessed value of the land contained on the Ventura Boulevard Property was $ 15,000 for the 1966/1967 property tax year. Under the tax assessment procedures then in effect, this $ 15,000 figure represented 25 percent of the County Assessor's determination of the full value of the land. The assessed value of the improvements thereon was $ 3,850 for the 1966/1967 property tax year. Decedent, subsequent to the transfer of the Ventura Boulevard Property and until her death, received and reported all of the income and claimed all of the deductions associated with the Ventura Boulevard Property on her own individual income tax returns. Anderson did not report the income or claim the deductions associated with the Ventura Boulevard Property during the life of decedent. Further, Anderson did not report as income the value of the interest in the Ventura Boulevard Property he received from decedent nor the value of the management services he asserts were rendered subsequent to his receipt of his interest in the Ventura Boulevard Property. Petitioner's estate tax return included 50 percent of the value of the Ventura Boulevard *652 Property. In a statutory notice of deficiency, respondent determined that 100 percent of the value of the Ventura Boulevard Property was includable in decedent's gross estate. The Main Street Property Interest
In the late 1960's and early 1970's, decedent had difficulty managing her financial affairs due to poor health, principally the result of the worsening of a lifelong asthmatic condition. Sometime in the early 1970's, decedent informed Anderson that she had funds to invest in real estate and suggested that she would enter into a business arrangement with him similar to the one they had in relation to the Ventura Boulevard Property. At decedent's death, decedent and Anderson held, in joint tenancy, record title to a 25-percent limited partnership interest in Main Street Properties (Main Street), a California limited partnership. The 25-percent limited partnership interest in Main Street had a fair market value of $ 58,165 on the date of decedent's death. The primary asset of Main Street was improved commercial real estate located at 2800 East Main Street, Ventura, California. The partners of Main Street were (1) decedent and Anderson; (2) a partnership consisting *653 of Anderson and Leonard Berkowitz, a former partner of Anderson's in the real estate business; and (3) another individual. The partnership of Anderson and Berkowitz owned 10 percent of Main Street, for which it paid cash. Anderson and decedent acquired their 25-percent interest in Main Street for the sum of $ 7,000, paid solely by decedent. Anderson paid no consideration in the form of money or property for the interest he shared with decedent. Anderson asserts the existence of an oral agreement with decedent whereunder he received his interest in Main Street in consideration for his services in locating the partnership investment and managing decedent's interest. At all times until decedent's death, Anderson acted for decedent in all matters of partnership business of which the review or approval of the limited partners was required. Anderson received no compensation from Main Street for his efforts in locating and procuring the partnership property and organizing the partnership or for securing decedent's investment as a limited partner. Petitioner's estate tax return included in decedent's gross estate 50 percent of the limited partnership interest held by the partnership *654 comprised of Anderson and decedent. In the statutory notice of deficiency, respondent determined that 100 percent of the limited partnership interest in Main Street held by Anderson and decedent was includable in decedent's gross estate. The Seis Associates Investment
At the time of decedent's death, record title to a 29.41-percent limited partnership interest in Seis Associates (Seis), a California limited partnership, was held in the names of decedent and Anderson as joint tenants. The 29.41-percent interest had a fair market value on July 3, 1983, of $ 73,663. Seis' primary asset consisted of commercial real estate located at Sycamore and Los Angeles Avenues in Simi Valley, California. Anderson and two business associates located the Seis property and formed the partnership consisting of a general partnership of Anderson, Berkowitz, and another individual, as the general partner, and four limited partners including decedent and Anderson. The general partnership owned 25 percent of Seis, for which it paid cash. Decedent and Anderson acquired their limited partnership interest in Seis through an initial cash contribution of $ 10,000.00 and an additional capital contribution *655 of $ 1,764.60. All of these sums were paid with funds belonging to decedent. Anderson paid no consideration in the form of money or property for his interest in the partnership. Anderson asserts the existence of an oral agreement with decedent whereunder he received his interest in Seis in exchange for his services in locating the Seis partnership investment and managing it for decedent. Anderson acted for decedent in all matters of partnership business requiring the review or approval of the limited partners. Anderson received no compensation from Seis for his efforts in locating and procuring the Seis partnership property and organizing the partnership or for securing decedent's investment as a limited partner. Decedent received and reported all of the income from the Seis property until her death. On petitioner's estate tax return, Anderson included in decedent's gross estate 50 percent of the limited partnership interest in Seis held by decedent and Anderson immediately before her death. In the statutory notice of deficiency, respondent determined that 100 percent of the limited partnership interest in Seis held by decedent and Anderson was includable in decedent's gross estate.
*656 OPINION Types of Interests Created
Through stipulations, the parties are in agreement that the Seis and Main Street limited partnership interests were held by decedent and Anderson as joint tenants. Our analysis, therefore, begins with a determination of the type of interest held by decedent and Anderson in the Ventura Boulevard Property. Petitioner asserts that the interests held by decedent and Anderson were contingent remainders. Respondent contends that decedent and Anderson were true joint tenants. The parties agree, however, that this Court's determination of the type of interest held in the subject property is governed by California law. Commissioner v. Estate of Bosch, 387 U.S. 456 (1967). We recognize that in the absence of a decision by the state's highest court, as in the present case, we must apply what we find to be the state law after giving proper regard to relevant rulings of other courts of the state. 387 U.S. at 465. In this respect, it may be said that we are sitting as a state court. 387 U.S. at 465. *657 California Civil Code section 683 (West 1982) provides: A joint interest is one owned by two or more persons in equal shares, by a title created by a single will or transfer, when expressly declared in the will or transfer to be a joint tenancy, or by transfer from a sole owner to himself or herself and others, or from tenants in common or joint tenants to themselves or some of them, or to themselves or any of them and others, or from a husband and wife, when holding title as community property or otherwise to themselves or to themselves and others or to one of them and to another or others, when expressly declared in the transfer to be a joint tenancy, or when granted or devised to executors or trustees as joint tenants. A joint tenancy in personal property may be created by a written transfer, instrument or agreement. Decedent executed an instrument entitled "Joint Tenancy Grant Deed" whereupon she granted to herself and Anderson the Ventura Boulevard Property to be held as "joint tenants." The interest created by decedent thus falls within the purview of a joint tenancy pursuant to the above-quoted statutory language. *658 Under California law, if title to property is held in joint tenancy, a presumption arises that the property is as described. Machado v. Machado, 58 Cal.2d 501, 375 P.2d 55, 25 Cal.Rptr. 87, 90 (1962); Schindler v. Schindler, 126 Cal.App.2d 597, 272 P.2d 566, 568 (1954). The presumption cannot be rebutted by "testimony of the hidden intentions of one of the parties, but only by evidence tending to prove a common understanding or an agreement that the character of the property was to be other than a joint tenancy." Machado v. Machado, 58 Cal.2d 501, 375 P.2d 55, 25 Cal.Rptr. at 90. In the present case, petitioner has not set forth evidence of a common understanding or an agreement between Anderson and decedent that would rebut the state law presumption. Petitioner contends that the interest that decedent created was not a joint tenancy, but rather that decedent created a life estate interest in the income from the property for herself and contingent remainder interests for herself and Anderson. Petitioner relies on Zeigler v. Bonnell, 52 Cal.App.2d 217, 126 P.2d 118 (1942), *659 and Toth v. Crawford, 212 Cal.App.2d 827, 28 Cal.Rptr. 343 (1963), for this proposition. In Zeigler, the District Court of Appeal determined the rights of a judgment creditor of one joint tenant as against the real property held in joint tenancy as follows: When a creditor has a judgment lien against the interest of one joint tenant he can immediately execute and sell the interest of his judgment debtor, and thus sever the joint tenancy, or he can keep his lien alive and wait until the joint tenancy is terminated by the death of one of the joint tenants. If the judgment debtor survives, the judgment lien immediately attaches to the entire property. If the judgment debtor is the first to die, the lien is lost. * * * [Zeigler v. Bonnell, 52 Cal.App.2d 217, 126 P.2d at 120.] In the process of making this determination the District Court of Appeal stated: The right of survivorship is the chief characteristic that distinguishes a joint tenancy from other interests in property. The surviving joint tenant does not secure that right from the deceased joint tenant, but from the devise or conveyance by which the joint tenancy was first created. *660 * * * While both joint tenants are alive each has a specialized form of a life estate, with what amounts to a contingent remainder in the fee, the contingency being dependent upon which joint tenant survives. * * * [Ziegler v. Bonnell, 126 P.2d at 119.] Petitioner's reliance upon Zeigler is without merit. Zeigler merely analogizes the two interests in an effort to clarify the holding. It does not equate them. In Toth, the District Court of Appeal held that joint tenants may contract, as between themselves, that one of the joint tenants shall have exclusive possession of the joint tenancy property and such a contract does not destroy the other consequences of the joint tenancy form of ownership even though the contract for possession is contemporaneous with the creation of the joint tenancy. Toth v. Crawford, 212 Cal.App.2d 827, 28 Cal.Rptr. at 344. Toth does not support petitioner's position that decedent's interest was a contingent remainder. Petitioner next contends, and we agree, that common law requires the presence of four *661 unities for the valid creation of a joint tenancy interest and that the California Civil Code definition of joint tenancy property does not abrogate the common law rule. See Hammond v. McArthur, 30 Cal.2d 512, 514, 183 P.2d 1 (1947); McDonald v. Morley, 15 Cal.2d 409, 412, 101 P.2d 690 (1940). The four unities are: (1) unity of time; (2) unity of title; (3) unity of possession; and (4) unity of interest. Tenhet v. Boswell, 18 Cal.3d 150, 155, 133 Cal.Rptr. 10, 14 (1976). We disagree, however, with petitioner's contention that one of these unities, the unity of interest, was not present. Petitioner asserts that Anderson and decedent held differing interests because (1) decedent retained all the income from the Ventura Boulevard Property during her lifetime and (2) the interests did not accrue by one and the same conveyance. Decedent and Anderson orally set forth preconditions of the conveyance of the interest to Anderson. These preconditions were that (1) decedent would provide the capital and retain the income from the property and (2) Anderson would perform the management services for the property. As a result of Anderson's *662 execution of the deed, each thereafter had the right of survivorship. Decedent and Anderson understood that her or his interest in the Ventura Boulevard Property would, on her or his death, pass to the surviving joint tenant. If Anderson had died first, decedent would have been the sole owner of the Ventura Boulevard Property. The right of survivorship is the feature that distinguishes a joint tenancy from the other forms of property ownership. See Zeigler v. Bonnell, supra. Petitioner has provided neither authority nor persuasive reasons why an agreement as to the division of income from property held in joint tenancy form precludes a joint tenancy relationship. See Toth v. Crawford, supra, which suggests the opposite rule, i.e., that such agreements do not destroy the joint tenancy effect of a conveyance. Anderson and decedent were both licensed real estate brokers and knew what a joint tenancy meant. They created one, and we are not persuaded that they intended anything different. Petitioner has not rebutted the presumption of a joint tenancy *663 with regard to the subject property. Adequacy of the Consideration
A decedent's gross estate includes the full date of death value of jointly held property, except such part of the entire value as is shown to be attributable to consideration furnished by the surviving joint owner. Section 2040. In determining the consideration furnished by the surviving joint tenant, amounts furnished by the decedent to the surviving joint tenant for less than full and adequate consideration are to be ignored. If part of the consideration is found to have been contributed by the surviving joint tenant, then the part of the value of the property as is proportionate to such consideration is not included in the decedent's gross estate. Section 20.2040-1, Estate Tax Regs. Anderson contends that performing management activities with regard to the Ventura Boulevard Property and locating and managing the interests of decedent with respect to the Seis and Main Street limited partnership interests constituted adequate and full consideration for his interest in the subject properties. Respondent asserts *664 that the services Anderson performed were minimal and part-time and that Anderson has not established a value for his services. Our determination of whether Anderson provided full and adequate consideration is necessarily one of fact. See Estate of Heidt v. Commissioner , 8 T.C. 969, 974 (1947), affd. 170 F.2d 1021 (9th Cir. 1948). Our analysis begins with the Ventura Boulevard Property. Respondent cites Estate of Ehret v. Commissioner, T.C. Memo. 1976-315, for the proposition that the furnishing of part-time and minimal services precludes petitioner from claiming such services were provided for a full and adequate consideration. In Ehret, this Court determined that unpaid services of a spouse were not adequate and full consideration for her claimed interest in the acquisition of jointly held property. We specifically found that Mrs. Ehret "devoted most of her time to child rearing, and only after the child rearing was completed did she perform any services in her husband's [plumbing] business." 35 T.C.M. 1432, 1434, 46 P-H Memo T.C. par. 76,315 at 76-1410. *665 The services Mrs. Ehret was to perform included answering the telephone, paying bills, and, on occasion, showing customers plumbing fixture catalogs. We there concluded that Mrs. Ehret's services were minimal and part-time and that she had not sustained her burden of proof with respect to their value. In the present case, the services Anderson performed with regard to the Ventura Boulevard Property were real and more than minimal or part-time. Anderson acted as a landlord and as a property manager performing such tasks as locating tenants, negotiating leases, collecting rents, and any other necessary management functions associated with the property. The nature of the services performed by Anderson makes their completion significant but the length of time spent performing them inconsequential. This case is clearly distinguishable from Ehret. In view of the number of tenants that have occupied the Ventura Boulevard Property during the years in issue, we conclude that Anderson performed services with regard to the Ventura Boulevard Property sufficient to constitute full and adequate consideration for the receipt of his joint tenancy interest. With regard to the Seis and *666 Main Street property interests, however, we cannot distinguish the services Anderson performed on his own behalf in his capacity as a general partner in the respective limited partnerships from those performed for decedent. We conclude that Anderson's representation of decedent's limited partnership interest, which merely involved acting for decedent in matters affecting the partnership, is insufficient to constitute full and adequate consideration for the joint tenancy interests he received. Fair Market Value of the Ventura Boulevard Property
Because we have concluded that one-half of the consideration for the acquisition of the Ventura Boulevard Property was furnished by Anderson, the remaining half must be valued for purposes of determining the amount to be included in decedent's gross estate. The subject property is included in decedent's gross estate at one-half of its fair market value at the date of her death. Fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or *667 to sell and both having reasonable knowledge of relevant facts. Section 20.2031-1(b), Estate Tax Regs. Two expert appraisals were submitted prior to trial in accordance with Rule 143(f) and the Court's Standing Pre-Trial Order. Based on testimony given at trial, petitioner's expert report and testimony were stricken as unreliable. That expert failed to verify information he relied on in his report and admitted at trial that it was incorrect. Only the report and testimony of respondent's expert are in evidence. Respondent's expert made his appraisal using a combination of two appraisal methods, the income approach and the market value approach. Initially, respondent's expert determined, under the market value approach, that, based on the sale of comparable properties within the same area and at about the same time, the Ventura Boulevard Property was worth $ 45 per square foot or $ 1,125,000. Next, respondent's expert determined a value for the leasehold interest that encumbered the Ventura Boulevard Property, increased that value by a factor of 17.5 percent to reflect appreciation from the date of death to the date the lease expired, and then coupled the appreciated value *668 of the leasehold interest with the initial unencumbered value of the property and discounted, at 13.5 percent, to present value. Respondent's expert discounted the other net income from the Ventura Boulevard Property by 10.5 percent -- the "prime rate" at the date of decedent's death. Respondent's expert thereby concluded that the Ventura Boulevard Property had a value of $ 855,000. Petitioner concurs with respondent's appraised value of $ 855,000, but contends (1) that respondent's expert's valuation should not include appreciation in the Ventura Boulevard Property subsequent to the valuation date in determining the value of the leasehold interest and (2) that the leasehold interest should be discounted using the 10.5-percent rate respondent's expert used for the other net income from the Ventura Boulevard Property. Respondent maintains that his expert properly valued the Ventura Boulevard Property by adding the present value of the income stream to the value of the leasehold interest at the end of the existing lease term. We must weigh the expert opinion evidence in light of the demonstrated *669 qualifications of the expert and all other credible evidence. Estate of Christ v. Commissioner, 480 F.2d 171, 174 (9th Cir. 1973), affg. 54 T.C. 493 (1970). We are not bound by the opinion of any expert witness; we may accept or reject expert testimony that is contrary to our judgment. Estate of Hall v. Commissioner, 92 T.C. 312, 338 (1989). We have found no support for respondent's expert's adjustment for post-death appreciation. The projected appreciation, even if appropriate in valuing the leasehold interest, is too speculative to be given any weight. We conclude that respondent's expert erred in considering post-death appreciation in valuing the leasehold interest. Petitioner, however, acknowledges that the proper discount rate to be applied to the projected lease payments is the same rate that respondent's expert used for discounting the other net income from the Ventura Boulevard Property, 10.5 percent rather than the greater 13.5 percent. Substitution of the 10.5 percent rate, coupled with elimination of the 17.5 percent post-death appreciation, results in a value of the Ventura Boulevard Property of $ 814,045, which is *670 our best judgment of the correct amount as of the date of death. We have considered and reject petitioner's other arguments, including, for example, that the notice of deficiency is arbitrary and excessive. It is not. Decision will be entered under Rule 155.